EFFIE TODHUNTER, Plaintiff, v. LAWRENCE DE GRAFF, JUDGE, Defendant.

**Divorce:** VACATION OF JUDGMENT FOR FRAUD.  The court has power to correct its own records during the term, and to modify, set aside or expunge an order or decree theretofore entered at the same term; and where a decree of divorce was procured by fraud or perjury the court, upon its own motion and upon due notice to all parties interested, had power to reopen the case and set aside the decree; and the fact that the information came from a stranger to the suit was immaterial, as the court acted upon its own motion.

**Same:** VACATION OF DECREE: NOTICE.  Where notice of divorce proceedings was served upon a non-resident defendant by publication, for whom no appearance was made, it was the duty of the court to protect itself and the rights of the defendant against the fraud or perjury of the plaintiff; and no notice to defendant was required of a hearing to determine whether the decree was procured by fraud.

**Same.**  Where it did not appear that plaintiff in divorce proceedings had married another after divorce from her former husband, but it did appear that both before and after the decree she had illicitly cohabited with another, such other party was not entitled to notice of the proceedings instituted to determine whether the decree of divorce was obtained by fraud; since, as it appeared that their cohabitation was meretricious, there was no legal presumption of marriage.

### TUESDAY, MARCH 24, 1914.

Certiorari proceedings to the District Court of Polk County to review an order setting aside a decree of divorce granted to the plaintiff.—*Affirmed.*

*George Wambach* and *Berry & Watson,* for plaintiff.

No appearance for defendant.

DEEMER, J.—May 2, 1913, plaintiff filed a petition in the district court of Polk county, asking for a decree of divorce from her husband, Clift Todhunter, alleging desertion as a ground therefor. Service of notice was made by publication and at the following September, 1913, term of court, the matter came on for hearing, the defendant not appearing, and, upon hearing the testimony offered on behalf of plaintiff a decree of divorce was granted on the 11th day of September of that year. The decree was absolute and awarded plaintiff the custody of the minor child.

On September 15th of the same year plaintiff filed a supplemental petition or application in which she asked that the court modify its decree, and permit her to marry. This application was granted and a supplemental decree was passed giving her permission to remarry. It is claimed that pursuant to the permission she did marry one Joe Heather.

On October 11, 1913, and during the same term of court one Allison, a stranger to the proceedings, appeared before the judge trying the case and filed an affidavit in which he charged that plaintiff, during the pendency of her divorce proceeding and afterward, had been living in open adultery with Heather; that the defendant in the divorce proceeding had, as plaintiff well knew, been in the insane hospital at Clarinda where he had been confined until the winter or spring of the year 1913; that he had never deserted the plaintiff, as she well knew; that plaintiff was in fact a resident of the city of Indianola, in Warren county, at the time she commenced her suit in Polk county; and that at the time she brought her suit for divorce she contemplated marrying Heather. The affidavit also showed that just previous to the bringing of her suit in Polk county, plaintiff had commenced an action for divorce from her husband in Warren county, in which she alleged as grounds therefor cruel and inhuman treatment and habitual drunkenness, that a guardian ad litem was appointed for the defendant in that suit, who had filed an answer, and that but a few days before bringing the suit

in Polk county she had dismissed her action in Warren county. Upon this affidavit, and from other sources of information, the trial court made the following order:

Whereas, on the 11th day of September, 1913, the above-entitled cause came on for trial before the undersigned judge of the district court in and for Polk county, and whereas, on the 11th day of September, 1913, a decree was signed and entered in said cause, and whereas, since the entry of said decree in said cause, information has come to this court and to the judge presiding in said cause that the plaintiff was not a bona fide legal resident of said county and state at the time of filing her petition in said cause, and that her residence in Polk county, Iowa, was not in good faith and was for the purpose of obtaining a divorce, and further that the defendant in said cause upon whom notice by publication was had for the purpose of giving this court jurisdiction in the premises was at said time an insane person, and was at said date not a discharged patient from the said hospital for the insane at Clarinda, Iowa, and further that the allegations of the plaintiff in her petition that the said defendant was guilty of willful desertion for more than two years was false and untrue, and that the proof offered in support thereof upon the trial of said cause was false and untrue, and in support of the falsity of the allegations of plaintiff in her petition hereto is attached and made a part of the affidavit of one Frank Allison and in order that the truth of the statements therein contained and to determine whether or not perjury has been committed and fraud practiced upon this court, the court on its own motion orders that said cause be reopened, and it is further ordered that notice be served upon the plaintiff, Effie Todhunter, that further hearing shall be had in said matter before this court on the 20th day of October, 1913, at 2 p. m., and that notice of said hearing shall be served upon the plaintiff, Effie Todhunter, at least five days prior to said date.

This order was made on the 14th day of October, 1913, and a notice, of which the following is a copy, was served upon the plaintiff:

To Effie Todhunter: You are hereby notified that an order of court has been entered in the above-entitled cause, a

copy of which is hereto attached, ordering and directing the
reopening of said cause for the purpose of determining the
truth or falsity of the allegations of plaintiff's petition and
the truth or falsity of the proof offered in support thereof
upon the trial of said cause, and you are notified that under
order of court said cause shall be reopened for the purpose
of taking further testimony on the 20th day of October, 1913,
at 2 p. m., before Lawrence De Graff, judge of the district
court in and for Polk county, Iowa. Lawrence De Graff.

Plaintiff responded to this notice, and filed a resistance
to the setting aside of the decree, which was accompanied by
an affidavit from plaintiff in which she attempted to show
residence in the city of Des Moines, Polk county, at the time
her petition was filed in that county. She also stated in her
affidavit:

That at the time when she commenced the action, she
firmly believed that the said defendant was taken to the in-
sane hospital in October, 1909, and that said defendant was
committed to the hospital for the insane at Clarinda, on the
information of his father, and was against the objections of
this affiant. That at the time of said divorce being called,
this affiant testified that the said defendant was let out of
the hospital for the insane about two years ago and in giving
said testimony, she believed that it was two years since he
was let out of the hospital. That she has been informed from
time to time that the said defendant was working outside of
the hospital, and also worked in the laundry of said hospital
and was at liberty. That she received a letter from said de-
fendant when he was at or near Sidney, Iowa, and after he
was let out of said hospital, purporting to give her notice
that he would not live with affiant any longer, that said let-
ter had become lost or was destroyed and she was unable to
give the exact date when said letter was written, but believed
that the same was about two years prior to the time. That
since the filing of the affidavit reciting the dates, etc., affiant
has made inquiry as to the exact time or times when the said
defendant was committed to the hospital for the insane, and
when he was dismissed from said hospital, and found that
she was mistaken as to the dates mentioned in her petition
and the testimony, and now states that the said defendant

was committed to the hospital for the insane at Clarinda, Iowa, in October, 1910, and was dismissed on parole from said hospital in October, 1912. That for the further confirmation of the dates herein given, she procured the certificate of Max E. Witte, the superintendent of the insane hospital at Clarinda, which is hereby attached and made a part of this affidavit, that this defendant is credibly informed and believes, and upon such information and belief states the fact to be, that the said Clift Todhunter, after the dismissal from the hospital at Clarinda, secured employment on a farm near Sidney, Iowa, with one John Biggins, and that he remained with the said John Biggins, working on said farm for a period of about three months, that during that time he was so employed he made the declaration that he and his wife could not get along together and so he left her, and when he was ready to start for California in January or February, 1913, he stated to the said John Biggins, that he intended to go there to make his home and that he did not intend to take his wife with him for the reason that it was all he could do to take care of himself without being bothered by her, and that the said Clift Todhunter during all of the time he was employed by said Biggins was of sound mind, according to the declaration of the said John Biggins, and he was of sound mind at the time of his leaving for California.

She further recited that her husband, shortly after their marriage, became addicted to the habitual use of intoxicating liquors, and had frequently struck, beat, and bruised her in a cruel and inhuman manner, and that his insanity grew out of the use of intoxicants. She also stated:

That all of the testimony given by this affiant in the trial of said cause was given in good faith, and if she was misinformed as to the facts stated in any of said testimony same was the result of an honest mistake, and was not given with any intent to deceive or mislead the court in any particular, and the facts herein stated are the result of fuller investigation and the result of information derived from the certificate of Max E. Witte, superintendent of the hospital for the insane at Clarinda.

On the issues thus presented, the cause came on for hearing on October 20, 1913, and the trial court made the following order:

Let the record show that this case was reopened on the court's own motion, by reason of the affidavit filed with the court by one Frank Allison, and by reason of other matters called to the attention of the court from other sources including some letters, that the court has fixed today as the time for hearing upon the notice filed in said cause, and that the affidavit referred to was also filed as a part of the order to reopen said cause.

Testimony was adduced pro and con on the question of plaintiff's residence and of her husband's alleged desertion; but the trial court refused to hear any testimony regarding the husband's use of intoxicants and of his cruel treatment of the plaintiff, and, after all the testimony was adduced, the following entry was made of record:

. . . The testimony having been offered and the court being duly advised finds and determines that the petition of said plaintiff in said cause alleges and charges willful desertion on the part of the defendant; and that the said allegation of desertion is the only cause for divorce alleged and charged by the plaintiff in said petition; that the testimony shows that the defendant herein for a considerable time prior to the filing of said petition was an inmate of the state hospital for the insane at Clarinda, Iowa, having been adjudged insane and committed to said hospital as an insane person from Dallas county, Iowa, and at the time of filing said petition was a paroled inmate of said hospital and not discharged therefrom; that the period of the alleged desertion corresponded in time or the major part thereof to the period of commitment and incarceration of the defendant in the said hospital for the insane and during the period of the adjudged insanity of the defendant; that the court further finds and determines that the defendant as an insane person cannot be guilty of willful desertion of his wife as a matter of law, wherefore, for said reason and for other causes and

reasons disclosed by the record in this cause, it is now ordered and adjudged that the decree of divorce heretofore signed, filed, and entered in this cause, and the modified and supplemental decree filed herein, be and the same are hereby vacated, canceled, and set aside. It is further ordered that said cause shall stand for trial at the November, 1913, term of this court and the plaintiff on her own motion and request is permitted and consent of court is hereby given to amend her said petition.

Instead of amending her petition and proceeding with her case at the November term of court plaintiff sued out this writ of certiorari, claiming that the trial court was without jurisdiction in setting aside its former decree and order, and that it acted illegally in that it took into account affidavits from strangers to the proceedings and procured from a former counsel of plaintiff in the Warren county court, letters, etc., which came into his hands as such attorney, thus violating the statute making such matters absolutely privileged.

It will be noticed that the court acted upon its own motion in the proceedings which are called in question, on facts brought to his attention by strangers to the decree, that notice was given to the plaintiff by order of court, that she appeared and resisted the setting aside of the former decree and order, and that the entire proceedings were at the term in which the decree and order were entered. There was a showing not only of want of jurisdiction of the court to grant the decrees and orders, but also to the effect that the decrees and orders were granted upon testimony which was false and untrue in fact, if not deliberately manufactured. The court did not find want of jurisdiction to grant the original decree, because the testimony was sufficient in its mind, no doubt, to justify the conclusion that plaintiff was a resident of Polk county at the time she commenced her action in that county. That she had been a resident of the state for more than one year is conceded, and no particular length of resi-

1. DIVORCE: vacation of judgment for fraud.

dence in the county where suit is brought is required. Code, section 3171, and cases cited.

But it just as clearly appeared that plaintiff's husband had not deserted her and absented himself for two years without reasonable cause. If there had been any desertion, it was for but a short time, and plaintiff was either mistaken or willfully falsified in giving her testimony upon which the original and supplemental decree were based. Moreover, the decree permitting remarriage was evidently obtained by fraud. Under such a state of facts was the court without jurisdiction in setting aside the decree and order, or did it act illegally in so doing?

It seems to us that there is but one answer to this proposition. The trial court at the same term in which the original decrees were entered ascertained that there was a question not only as to his jurisdiction to enter them, but also as to whether both were obtained by fraud, mistake, or willful perjury. Has it no power at that same term, upon due notice to the parties, to investigate these questions; or is it bound to permit the decree and order to stand, because forsooth its information on the subject comes from a stranger or from incompetent sources? We do not understand that any court is so handicapped. At least until the close of the term the court has full power over all judgments, orders, or decrees theretofore entered by it, and upon proper notice to interested parties may change, modify, or set them aside. After the term there may be some doubt about the matter, unless action be brought by proper parties in interest.

Section 243 of the Code provides that the record is under the control of the court, and may be amended or any entry therein expunged at any time during the term at which it is made, and before it is signed by the judge. See, also, the following cases: *Taylor v. Lusk,* 9 Iowa, 444; *Brace v. Grady,* 36 Iowa, 352; *Kirby v. Gates,* 71 Iowa, 100; *Flickinger v. Ry.,* 98 Iowa, 358; *Chicago, Iowa & D. Ry. v. Estes,* 71 Iowa, 603; *Hawkeye Co. v. Duffie,* 67 Iowa, 175. That the information

on which the court acts comes from a stranger is no objection
to the order, for the court may act on its own motion. *Wol-
merstadt v. Jacobs,* 61 Iowa, 372. Even without such a statute
as we have quoted, the court has undoubted inherent power to
correct its own records, during the term, and to set aside,
modify, or expunge any order, decree, or judgment theretofore
ordered at the same term, and the power exists until adjourn-
ment *sine die. Eno v. Hunt,* 8 Iowa, 436; *Frink v. Frink,*
43 N. H. 508 (80 Am. Dec. 189, 82 Am. Dec. 172) ; *Hamilton
v. Seitz,* 25 Pa. 226 (64 Am. Dec. 694) ; *Stockdale v. Johnson,*
14 Iowa, 178; *Goodrich v. Conrad,* 28 Iowa, 298; *Robbins v.
Neal,* 10 Iowa, 560.

These are very fundamental propositions, and the only
question which may ever properly arise grows out of the fact
that third parties may have acted thereon, who may be pre-
judiced by any change. As to plaintiff in this case, who was
guilty of the fraud, mistake, or perjury, she is certainly in no
position to complain.

In *Rush v. Rush,* 46 Iowa, 648, it was expressly held that
a decree of divorce obtained by fraud may be set aside, al-
though the rights of innocent third parties may have inter-
vened. Many cases are cited in the opinion holding to this
doctrine, and the rule was applied to a petition to set aside
a decree at a term after it was rendered.

The defendant in the divorce proceeding made default
and was a nonresident of the state. No appearance had been
entered for him, and it was the duty of the court to protect
itself and also the defendant from a fraudu-
2. SAME: vaca-
tion of decree: lent decree. No notice to him was required.
notice.          Whether such notice would have been neces-
sary had an application been made after the term by some
party in interest, we have no occasion now to decide. A
fraud was perpetrated upon the court, which it was its duty
to correct, and this it did by the order in question. *Whitcomb
v. Whitcomb,* 46 Iowa, 437; *Adams v. Adams,* 51 N. H. 388,
(12 Am. Rep. 134).

One of the singular things about this record is that it does not show when plaintiff married Heather, if at all. There is testimony to the effect that she lived with him before she obtained the decree of divorce, as she says, to take care of him during an illness, and it

**3. SAME.**

also appears that some complaint was made of them because of their relations both before and after the decree of divorce was granted; but we find nothing in the record showing when any marriage ceremony was ever performed, and as they commenced living together in a meretricious way there is no presumption of a legal marriage. There was no occasion, then, for any service of notice on him, and as the action of the court was during term time, and the service was by publication, no notice to the defendant in the suit was required. The court was bound to protect him during the term from a fraudulent decree.

There is no error of which plaintiff may justly complain, and the order must be affirmed and the writ dismissed.— *Affirmed.*

LADD, C. J., and WITHROW and GAYNOR, JJ., concurring.