In re the MARRIAGE OF Connie
McCREARY and Norman E.
McCreary.

Upon the Petition of Connie
McCREARY, Appellant,

And Concerning

Norman E. McCREARY, Appellee.

No. 61642.

Supreme Court of Iowa.

March 21, 1979.

**400**

William Knapp, of Stewart, Wimer, Hudson & Flynn, P. C., Des Moines, for appellant.

Patrick H. Payton, of Payton & Hearn, P. C., Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and REES, McCORMICK, McGIVERIN and LARSON, JJ.

McCORMICK, Justice.

The trial court modified the parties' dissolution decree to transfer custody of their two children from petitioner Connie McCreary to respondent Norman E. McCreary. Connie filed a notice of appeal from the court's findings of fact, conclusions of law, and ruling. Subsequently the court entered a supplemental decree. Norman moved to dismiss the appeal as taken prematurely. We transferred the case to the Court of Appeals which overruled the motion to dismiss and, in a three-to-two decision, reversed the trial court. After granting further review, we remanded the case for entry of an order nunc pro tunc making the supplemental decree effective prior to the taking of the appeal. On the merits, we vacate the decision of the Court of Appeals and affirm the trial court.

I. *The motion to dismiss.* In the ruling portion of its "findings of fact, conclusions of law, and ruling," the trial court said it was "the ruling of the Court that the Original Decree be modified so as to change the custody of the minor children, Michael and Karen McCreary, from the petitioner to respondent." The court taxed costs one-half to each party. Then it ordered: "Counsel for the respondent shall prepare a Supplemental Decree in conformance with these findings and submit the same to the Court for signature." Within thirty days after the filing of this document, Connie filed notice of appeal. Two days later the trial court entered the "Supplemental Decree." We have no jurisdiction to entertain an appeal from any ruling which is not a final judgment or decision of the district court when permission for interlocutory appeal has not been obtained. Iowa R.App.P. 1. A ruling is not final when the trial court intends to do something further to signify its final adjudication of the case. *Flynn v. Lucas County Memorial Hospital,* 203 N.W.2d 613, 614–615 (Iowa 1973). When a ruling specifically provides for subsequent entry of a final order, the ruling itself is not a final judgment or decision. *Crowe v. DeSoto Consolidated School District,* 246 Iowa 38, 40, 66 N.W.2d 859, 860 (1954).

Consequently the appeal was prematurely taken in the present case. However, when the only deficiency is lack of a formal order incorporating terms of an otherwise complete ruling from which appeal was incorrectly taken, we have adopted an ameliorative procedure. We remand for the limited purpose of having the order entered nunc pro tunc as in *Crowe,* or, as in this case, made effective nunc pro tunc to make the appeal timely. *See Crowe* ; *Wilson v. Corbin,* 241 Iowa 226, 40 N.W.2d 472 (1950).

After granting further review in this case, we followed the *Crowe* procedure. Upon remand, the trial court entered a nunc pro tunc order making its formal decree effective prior to the taking of the appeal.

Therefore the ground of Norman's motion to dismiss is moot.

II. *The change of custody.* In reviewing the trial court's decree transferring custody of the parties' children from Connie to Norman, we are guided by well established principles which are summarized in *Hobson v. Hobson,* 248 N.W.2d 137, 139–140 (Iowa 1976). We apply these principles in a child custody case in light of the factors delineat-

ed in *In re Marriage of Winter,* 223 N.W.2d 165, 166–167 (Iowa 1974).

■ Connie and Norman were married in 1963. Their son Michael was born in 1964 and their daughter Karen was born in 1966. The marriage was dissolved in Des Moines in 1973.

Custody of the children was awarded to Connie pursuant to stipulation. She and the children remained in the Des Moines area where Connie manages an insurance agency. She did not remarry but had a number of boyfriends, two of whom were extensively discussed in the modification hearing. She dated one of them for about three years. He lived in the home for a while, although Connie testified she could not say how long. On one occasion he struck Michael. Another time he hit Connie hard enough to leave marks which the children later saw. The other man, whom she dated subsequently, spent two nights in the home with Connie, once when the children were present.

In October 1977, at a time when the children were visiting their father in Cedar Rapids, Connie's home suffered serious damage in a fire caused by arson. She moved to an apartment while the home was being repaired. The home and Connie's office were broken into, and she received two threatening letters. She and the police suspected one of the former paramours was responsible for these problems. She agreed that the children should remain with their father during this period. In November, when she asked for their return, Norman refused, expressing fear for the safety of the children. Shortly afterward he filed his application for transfer of custody, and the present proceedings resulted.

Norman remained in Des Moines for approximately a year and a half after the dissolution. His job as an over-the-road truck driver kept him away from the city much of the time. He moved to Cedar Rapids in 1974. In 1976 he remarried. At the time of the modification hearing he lived in a rented two-bedroom townhouse and had made arrangements to purchase a home if he were to receive custody. He was employed as a driver of a van for a distributing company, making deliveries in a nine-county area around Cedar Rapids. He was able to be home every night.

Shortly after Norman's application for modification was filed, the trial court ordered the children returned to Des Moines and an extensive hearing was held on the issue of temporary custody. On the basis of the evidence presented in the hearing, the court ordered that Norman retain custody pending final hearing.

Investigations and reports of the background and current situation in each home were also ordered.

By the time of the modification hearing, the children had been in Cedar Rapids for several months. They were enrolled in school there, had made new friends, and each expressed a preference to remain with their father and with each other.

An investigating social worker interviewed the parties and the children. She did not make a custody recommendation. She said Michael and Karen are exceptionally fine and well-adjusted children, although they were upset by the custody dispute. She said they loved both their parents but wished to remain with their father. She asserted Michael "wants desperately to live with his father," characterizing this wish as "the most important thing in his life right now."

Considering the whole record, and giving weight to the findings of the trial court, we believe Norman met his burden to prove circumstances since the original decree had so materially and substantially changed that the children's best interests made it expedient that custody be transferred to him.

In saying this, we do not wish to be understood as penalizing Connie for having left the children with Norman when her house was burned and the other turbulent events were happening. She is to be commended for seeking help when she needed it. *See In the Matter of Burney,* 259 N.W.2d 322, 325 (1977). Nor do we base our decision upon Norman's having ac-

quired any kind of vested right to custody by having provided assistance or by having been awarded temporary custody pending final hearing. Instead, we decide the case on the question whether during the period of Connie's custody the requisite material and substantial change in circumstances occurred.

The root of the problem is the mode of living chosen by Connie. Even though she cannot be charged specifically with responsibility for the violence which disrupted the home, she had adopted a pattern of living which exposed the children to serious risk of harm. Her conduct with men was understandably upsetting to the children. Wholly apart from the nature of her relationships, the men were not very nice people. Even Connie was upset when one of them struck Michael. The incidents which occurred in 1977 are symptoms rather than the cause of the problem.

The welfare of children is not measured solely in material terms. It has significant intellectual, spiritual, emotional and cultural dimensions. Although Connie is entitled to considerable credit for her care of the children, we believe her conduct with men adversely affected them in these respects. It did so not merely because it was contrary to traditional mores but because it made the home a scene of strife and confusion.

In contrast, Norman's life stabilized in the years after the divorce. His present marriage appears to be successful, and his employment enables him to devote the necessary time and energy to parental responsibilities. He has not always put the children's best interests ahead of his own interests, but he appears able and willing to offer the children the structured, wholesome and loving environment which they need.

This is also an appropriate case in which to give some weight to the preference of the children, particularly Michael, in view of his age and maturity. He was 14 at the time of the modification hearing.

We have no doubt of the love and good intentions of both parents toward the children, even though that attitude has not been reflected in their conduct toward each other. However, in the final analysis, we find ourselves in the same position as in *Zaerr v. Zaerr,* 222 N.W.2d 476, 478 (Iowa 1974), when we said:

As much as it would appear desirable to wait a while longer to see if Donna might reorder her life and offer the children a better home, and see if Jack's new business venture would materialize and the stability of his home persist, we recognize the children's welfare would not permit that kind of delay. Courts must act to prevent wounds from being inflicted on children and should not wait until injury occurs. They act on probabilities, not on certainties, and they must put the rights of children ahead of the competing custodial claims of parents.

The conclusion is difficult but necessary under the present record. We believe Michael and Karen's long-range best interests will be better served by the change of custody ordered by the trial court. We so hold.

DECISION OF COURT OF APPEALS VACATED; AFFIRMED.