**ROBCO TRANSPORTATION, INC., Appellant,**

v.

**Larry R. RITTER, Appellee.**

No. 83–915.

Supreme Court of Iowa.

Oct. 17, 1984.

David L. Davitt of Myers, Knox & Hart, Des Moines, for appellant.

Kermit L. Dunahoo, Des Moines, for appellee.

REYNOLDSON, Chief Justice.

The underlying controversy in this case concerns trial court's jurisdiction over defendant Larry R. Ritter, in circumstances one would expect to find only in an imaginative law school examination. We cannot reach the merits, however, because this appeal was taken too late to vest jurisdiction in this court. Consequently, we dismiss the appeal.

The facts alleged in the petition and subsequent affidavits are not controlling here, thus merit only brief review. Plaintiff Robco Transportation, Inc. (Robco), is a Minnesota corporation engaged in interstate trucking. Robco's principal place of business is in Iowa. It entered into a written contract in Iowa with defendant Ritter, a Wisconsin resident, to lease Ritter's truck

tractor and to have Ritter pull loads for Robco. Several other significant incidents of this transaction are alleged to have occurred in Iowa. Robco assigned a cargo of meat in Kansas to Ritter's driver, to be delivered in Alabama. The driver abandoned the equipment and cargo in Oklahoma. By the time the cargo was found it had been damaged in the alleged amount of $30,000.

February 24, 1983, Robco filed suit in Polk County, Iowa, alleging the negligence of Ritter's agent and seeking to recover $30,000 from Ritter for the damage done to its meat. March 1, 1983, Ritter was served personally in Potosi, Wisconsin. March 21, Ritter filed a special appearance under Iowa Rule of Civil Procedure 66, seeking dismissal of the action on grounds the court did not have personal jurisdiction over him.[1] Ritter alleged none of the circumstances giving rise to the petition had any connection with the state of Iowa. Robco filed no resistance to Ritter's special appearance.

April 8, the district court for Polk County, Judge Denato presiding, sustained Ritter's special appearance. April 11, Robco's district court attorney received a copy of the court's ruling. He immediately telephoned Judge Denato and told him Robco had not resisted Ritter's special appearance, because Robco had never received notice that Ritter had filed a special appearance. Judge Denato told Robco's counsel that he would be allowed to resist the special appearance. The latter then telephoned Ritter's attorney to obtain a copy of the special appearance, which he received in the mail on April 13.

April 20, 1983, Robco filed a "Resistance to Special Appearance," with supporting affidavits. Robco took no appeal from the district court's ruling of April 8; nor did Robco file a motion to enlarge under Iowa Rule of Civil Procedure 179(b). Neither did it petition to vacate the judgment under rules 252 and 253.

April 25, 1983, the district court entered an order stating "[t]he Court's ruling on special appearance ... will be reconsidered at hearing on 5/2/83." June 21, the district court, Judge Denato presiding, entered a second ruling sustaining Ritter's special appearance.

July 15, 1983, Robco filed notice of appeal, alleging the district court erred in sustaining Ritter's special appearance. Though this notice fell within thirty days of the court's second ruling, it was filed more than thirty days from the court's first ruling. For that reason, prior to oral argument, we raised the question of our jurisdiction to entertain the appeal. The parties having now had the opportunity to brief this issue and address it upon oral submission, we hold this appeal was not timely and we have no jurisdiction to entertain it.

I. Iowa Rule of Appellate Procedure 5(a) relevantly provides:

[A]ppeals to the supreme court must be taken within, and not after, thirty days from the entry of the order, judgment or decree, unless a motion for new trial or judgment notwithstanding the verdict as provided in R.C.P. 247, or a motion as provided in R.C.P. 179(b), is filed, and then within thirty days after the entry of the ruling on such motion ....

A timely appeal is jurisdictional, and cannot be conferred by consent, much less the silence of the appellee. It is our duty to refuse, on our own motion, to entertain an appeal not authorized by rule. *Qualley v. Chrysler Credit Corp.*, 261 N.W.2d 466, 468 (Iowa 1978); *see State v. Iowa Department of Social Services*, 328 N.W.2d 912, 913 (Iowa 1983).

A trial court's ruling sustaining a special appearance is a final order from which an appeal of right may be taken. *Boye v. Mellerup*, 229 N.W.2d 719, 720 (Iowa 1975); *Saxton v. State*, 206 N.W.2d 85, 86 (Iowa 1973). Before 1975, we ruled the sustention of a special appearance de-

---

1. The appropriate relief is now a motion to quash, not to dismiss. *See Universal Cooperatives, Inc. v. Tasco, Inc.*, 300 N.W.2d 139, 142 (Iowa 1981); 1 A. Vestal & P. Willson, *Iowa Practice* § 15.03(2) (1974 & Supp.1982).

termined the cause except as to the right to appeal or to vacate the judgment. *White v. Wilkes,* 173 N.W.2d 98, 99 (Iowa 1969); *Oldis v. John Deere Waterloo Tractor Works,* 259 Iowa 1111, 1117, 147 N.W.2d 200, 203 (1966); *Saxton,* 206 N.W.2d at 86. We stated that once a special appearance was sustained, further trial court action (except for a petition to vacate) was "an exercise in futility." *White,* 173 N.W.2d at 100.

■ In 1975, Iowa Rule of Civil Procedure 48 was amended. It now provides an action is commenced by filing a petition with the court. Consequently, it is no longer true that the sustention of a special appearance terminates the action except for the right to appeal or to vacate the judgment. *Casey v. Connolly,* 320 N.W.2d 631, 631 (Iowa 1982). Even though the trial court's sustention of a special appearance is appealed, the trial court retains jurisdiction of the case for certain limited purposes. *Id.* at 632 (Trial court did not lose jurisdiction to enter discovery order although it had sustained two prior special appearances.); *Universal Cooperatives, Inc. v. Tasco, Inc.,* 300 N.W.2d 139, 142 (Iowa 1981) (Trial court did not err in allowing further service upon defendant pursuant to rules 56.1 and .2, although appeal was pending from sustention of special appearance.).

■ Nor is a plaintiff's choice any longer limited to an appeal or a petition to vacate.

In *Kagin's Numismatic Auctions v. Criswell,* 284 N.W.2d 224, 226 (Iowa 1979), we held, in the circumstances presented, that a rule 179(b) motion would be allowed following sustention of a special appearance and the appeal time would not be triggered until there was a ruling on the motion.

■ The above cases are not authority, however, for the view that a trial court may undo its final judgment absent a motion to enlarge under rule 179(b) or a petition to vacate under rule 252.[2] A final judgment puts it beyond the power of the trial court to return the parties to their original positions. *Lyon v. Willie,* 288 N.W.2d 884, 886 (Iowa 1980). The 1975 amendment to rule 48 did not change the fact that the sustention of a special appearance is a final judgment for the purposes of appeal. *Tasco,* 300 N.W.2d at 142. Following the court's April 8 ruling sustaining Ritter's special appearance, Robco filed no motion challenging the ruling. Consequently, the trial court's June 21 "ruling" was without authority and a nullity.

We have no jurisdiction to consider this appeal, filed more than thirty days following trial court's April 8 ruling, *First National Bank v. Claiser,* 308 N.W.2d 1, 2 (Iowa 1981), unless one of Robco's remaining arguments is valid.

■ II. Robco urges us to consider its April 11 telephone call to Judge Denato the equivalent of a rule 179(b) motion. This would aid Robco because the time for ap-

---

**2.** The general language of Restatement (Second) of Judgments section 71, although superficially helpful to Robco, is inapplicable here as shown by the lead sentence in comment a under the rule, entitled "scope and rationale": "This Section applies to judgments rendered in contested actions as distinct from default judgments." Relief from a valid default judgment is the subject of section 67. Comment d following that section explains that "[o]nce having discovered that he is in default, the applicant for relief must act with reasonable promptness *and within the time limits of an applicable statute or rule of court.*" (Emphasis added.) An applicable rule under the federal practice is Federal Rule of Civil Procedure 60(b) ("Relief From Judgment or Order") referred to in *Chanofsky v. Chase Manhattan Corp.,* 530 F.2d 470, 472 (2d Cir.1976). That rule requires motions to be filed within one

year when alleging several of the grounds for relief, and contains language similar to Iowa Rule of Civil Procedure 252 ("Judgment vacated or modified—grounds").

The obscure language in *Jacobson v. Leap,* 249 Iowa 1036, 1039, 88 N.W.2d 919, 921 (1958), indicating petitions filed under rules of civil procedure 252 and 253 are not applicable when the judgment is void but "may be considered as motions," is clarified by a reading of the cases cited in support of that statement. The "motions" referred to are challenges to the jurisdiction of district court, *Miller v. Miller,* 242 Iowa 706, 708–09, 46 N.W.2d 732, 733 (1951), which properly are denoted "motions to vacate," and may be brought at any time. *Williamson v. Williamson,* 179 Iowa 489, 493–94, 161 N.W. 482, 484–85 (1917); *see Miller v. Farmers Cooperative Co.,* 176 N.W.2d 832, 835 (Iowa 1970).

peal does not begin to run until the trial court has ruled on such a motion. Iowa R.App.P. 5(a); *Kagin's Numismatic Auctions,* 284 N.W.2d at 226. Robco concedes it did not file a rule 179(b) motion, but contends such a motion need not be in writing.

We are unpersuaded for three reasons. First, there is nothing in the record to indicate such a motion was filed or served. Robco cites no authority for its assertion that such a motion need not be in writing. Its argument is contrary to the reasonable implication of rule 179(b) that such motions must be filed. Iowa R.Civ.P. 179(b) ("On motion joined with or *filed* within the time allowed for a motion for new trial ....") (emphasis added). In addition, rule 82 requires service of such motions. Iowa R.Civ.P. 82 ("Everything required by these rules to be filed ... shall be served upon each of the parties.").

Even assuming Robco's telephone call amounted to a rule 179(b) motion, there is a viable issue whether Robco selected the proper remedy in these circumstances. The purpose of a rule 179(b) motion is to give trial court an opportunity to enlarge its findings of fact and conclusions of law and, if need be, modify the judgment or substitute the judgment with a new one. Iowa R.Civ.P. 179(b). In this case, Robco sought post-ruling relief from what it alleged was a miscarriage in the service of Ritter's special appearance. It at least is questionable whether relief appropriately could be supplied by enlarging the findings of fact or conclusions of law on the merits of the controversy.

On the other hand, it is plain that a misfortune of this kind may be corrected by a rule 252 petition to vacate. By its terms, that rule lends aid to one caught in the predicament in which Robco found itself.

Iowa Rule of Civil Procedure 252 states:

Upon timely petition and notice ... the court may ... vacate ... a final judgment ... on any of the following grounds:

....

(b) Irregularity or fraud practiced in obtaining the same;

....

(e) Unavoidable casualty or misfortune preventing the party from prosecuting or defending.

*Oldis* supports the view that a failure of service amounts to unavoidable casualty. *Oldis,* 259 Iowa at 1117–18, 147 N.W.2d at 203–04 (attorney failed to resist special appearance, expecting to make his argument at the hearing requested by opposing attorney but not held).

Finally, we reject Robco's argument because adoption of its view would invite chaos in the district courts. Allowing counsel to make oral, ex parte, post-trial motions would degrade the importance and purpose of the rules of civil procedure.

Robco also contends trial court's order of April 25, setting a hearing for reconsideration of its April 8 ruling, was an order nunc pro tunc, nullifying its prior action. We may set to one side our case law that holds a nunc pro tunc order ordinarily does not extend the time for filing notice of appeal. *State v. Onstot,* 268 N.W.2d 219, 220 (Iowa 1978). We capsulated our rules governing nunc pro tunc orders in *McVay v. Kenneth E. Montz Implement Co.,* 287 N.W.2d 149, 150–51 (Iowa 1980):

Literally nunc pro tunc means "now for then." *Black's Law Dictionary* 1218 (Rev. 4th ed. 1968). A nunc pro tunc entry makes the record show now what was actually done then. *See Feddersen v. Feddersen,* 271 N.W.2d 717, 718 (Iowa 1978); *State v. Onstot,* 268 N.W.2d 219, 220 (Iowa 1978); *Headley v. Headley,* 172 N.W.2d 104, 108 (Iowa 1969). Its purpose is "to make the record show truthfully what judgment was actually rendered ...." *General Mills, Inc. v. Prall,* 244 Iowa 218, 225, 56 N.W.2d 596, 600 (1953). *"It is not for the purpose of correcting judicial thinking, a judicial conclusion or mistake of law."* *Headley,* 172 N.W.2d at 108 (emphasis added).... Thus if a court makes an error of fact or law in arriving at its judgment,

the appropriate remedy is not by way of a nunc pro tunc order but by other available procedures such as a motion under rule 179(b), R.Civ.P. . . . .

*See generally State v. Steffens,* 282 N.W.2d 120 (Iowa 1979).

A nunc pro tunc order is inapplicable in this case. When the district court entered its ruling sustaining Ritter's special appearance, it meant to do just that; the court did not inadvertently sustain the appearance while intending to do otherwise. *See McVay,* 287 N.W.2d at 151 ("[T]he intent of a trial judge is crucial to the determination of whether a nunc pro tunc order is appropriate to 'correct' a record.").

Nor do we believe, in the circumstances of this case, the court had some inherent power to nullify its April 8 judgment on the basis of a telephone call, assuming this was the intent, although certainly not articulated, in its April 25 order. The only decision cited by Robco for this proposition is *McVay,* from which we have quoted above. Also inapposite is *Miller v. Farmers Cooperative Co.,* 176 N.W.2d 832, 834–36 (Iowa 1970). The district court in *Miller* never obtained jurisdiction of an out-of-state defendant, who successfully raised the total absence of jurisdiction for a personal judgment by a motion to set aside. Such motions challenging a void judgment are not confined to the ordinary time limitations of rule and statute. *See Dimmitt v. Campbell,* 260 Iowa 884, 888, 151 N.W.2d 562, 565 (1967). Similarly irrelevant to the issue before us are the decisions in *Peterson v. Eitzen,* 173 N.W.2d 848, 849–50 (Iowa 1970) (court entered a specific written nunc pro tunc order, expressing its intent that the dismissal entered the day before was without prejudice); and *Todhunter v. De-Graff,* 164 Iowa 567, 575, 146 N.W. 66, 70 (1914) (court set aside divorce judgment on proof that defendant, who was "served" by publication, had not deserted plaintiff but was a committed "insane person" at all relevant times).

We are unable to adopt any of the grounds advanced by Robco in support of our jurisdiction to consider this appeal. Accordingly, this appeal must be dismissed.

APPEAL DISMISSED.

All Justices concur except McCORMICK, CARTER and WOLLE, JJ., who dissent.

McCORMICK, Justice (dissenting).

No question exists that the district court could have reconsidered and vacated its first ruling on the special appearance if its jurisdiction had been invoked by Robco through a petition to vacate judgment under Iowa Rule of Civil Procedure 252. I believe that a district court also has inherent authority to change its final judgments on its own motion, upon proper notice to the parties, in circumstances that would permit the same relief upon motion or petition by a party. Because I believe the district court had inherent authority to enter its April 25, 1983, order under this principle, I would hold that Robco's appeal from the second ruling sustaining the special appearance was timely.

WOLLE, J., joins this dissent.

CARTER, Justice (dissenting).

I dissent.

In denying the appellant the opportunity to have its appeal heard on the merits, the court engages in both an unduly rigid interpretation of what is permitted by our rules of procedure and an unwarranted interpretation of what was done by the district court in the present case.

At the outset, it is apparent that the April 8, 1983 order upon which the majority elects to end the litigation adversely to plaintiff was obtained without any opportunity for plaintiff to be heard on the issue upon which the case was decided. The appellee does not contest this fact, and the district court accepted it completely. Under such circumstances, plaintiff has clearly shown a right to avoid the effect of the April 8 order either on due process grounds or other well-established principles of substantive law. In Restatement (Second) of Judgments section 71 (1982), it is stated:

[A] judgment may be avoided if the judgment resulted from a mistake of law or fact and . . . .

[i]nvolved the denial of a fair hearing because of the plainly insufficient representation of a party or denial by the court of the opportunity to present a claim or defense.

*Accord, Chanofsky v. Manhattan Corp.*, 530 F.2d 470, 472 (2d Cir.1976) (misunderstanding over scope of submission held to be grounds for avoiding adverse final judgment).[1]

In the present case, the majority measures plaintiff's time for appeal from the date of filing the April 8 order. I submit that if plaintiff is entitled to avoid the order, it should also be deemed to have avoided the significance of the order with respect to computing the time for appeal. Any fair interpretation of what occurred in the district court compels a conclusion that the April 8 order was nullified by the district court, the matter was heard anew, and the June 21, 1983 order became the final judgment in the case. The June 21 order did not purport to deny reconsideration of the April 8 order but, rather, was in both form and substance a new order sustaining defendant's special appearance.

The majority suggests that the district court lacked power to avoid the April 8 order absent a motion under Iowa Rule of Civil Procedure 179(b) or a petition under rule 252. Based upon the majority's own characterization of rule 179(b), it was an inappropriate vehicle for seeking relief based on a lack of opportunity to be heard. And, although rule 252 may have been an appropriate means for seeking such relief, it is not the exclusive means. *Jacobson v. Leap*, 249 Iowa 1036, 88 N.W.2d 919 (1958).

I believe that in the present case the district court had inherent power, under cases such as *Peterson v. Eitzen*, 173 N.W.2d 848, 850 (Iowa 1970) and *Todhunter v. DeGraff*, 164 Iowa 567, 575, 146 N.W. 66, 70 (1914), to set aside the April 8 order based only on the telephone call from plaintiff's counsel.[2] It is not necessary, however, to go that far in order to uphold our jurisdiction to hear this appeal.

In *Miller v. Farmers Cooperative Co.*, 176 N.W.2d 832, 834–35 (Iowa 1970), a filing made forty-four days after an infirm judgment was entered was considered to be a basis for avoiding it although not cast in proper procedural form. In the present case, an affidavit was filed by plaintiff's counsel on April 20, 1983 (twelve days after the purported final judgment as compared with forty-four days in *Miller*), showing that no copy or notice of defendant's special appearance had been given to plaintiff prior to the court's April 8 order. The affidavit confirmed the telephone arrangement with the district court that the special appearance would be heard anew on the merits. If some written filing was required in order to give the plaintiff the relief to which it was entitled, this affidavit should suffice.

The record is clearly susceptible of an interpretation that the June 21 order was intended by the district court to be the final judgment in the case. In order to achieve this end, the April 25, 1983 order for reconsideration may fairly be interpreted as vacating the April 8 order. If there is any problem in this regard, it is susceptible of correction by an entry *nunc pro tunc.* Such *nunc pro tunc* procedure would involve reentry of the April 25 order for reconsideration so as to clearly spell out that the April 8 order was being vacated.[3]

---

**1.** The majority suggests that these provisions of the Restatement are inapplicable because they only affect judgments rendered in "contested actions." The April 8 order was a judgment rendered in a contested action within the Restatement connotation.

**2.** Such inherent power was recognized in the cited cases in addition to the statutory power which existed for over 100 years. This statutory

power last appeared as Iowa Code section 602.-15 (1977), repealed by 1976 Iowa Acts chapter 1245, section 10203.

**3.** This proposed procedure is clearly more compatible with *nunc pro tunc* procedure than that which this court invoked in *In re Marriage of McCreary*, 276 N.W.2d 399, 400 (Iowa 1979) and *Crowe v. DeSoto Consolidated School District*, 246 Iowa 38, 40, 66 N.W.2d 859, 860 (1954) in

To proceed in this manner, would, I submit, clearly reflect that which the district court intended to do in its April 25, 1983 order. The majority, in frustrating that clear intent, has placed plaintiff in a trap whereby the delays which took place in obtaining reconsideration and a second ruling from the district court have denied it its right of appeal. We should not permit that result and should consider the appeal on its merits.[4]

WOLLE, J., joins this dissent.

order to avoid jurisdictional deficiencies in the entry of final judgment. In *McCreary* and *Crowe,* the *nunc pro tunc* entries which were directed by this court clearly did not evidence that which had originally been intended by the district court. Yet we invoked that procedure for purposes of expediency.

4. The "flood gates" argument advanced by the majority as grounds for denying plaintiff relief from the April 8 order is untenable. The type of relief which plaintiff should be accorded would be available in only those rare instances where there has been a denial of a fundamental right.