**IN THE COURT OF APPEALS OF IOWA**

No. 16-2179
Filed April 5, 2017

**IN THE INTEREST OF C.H. and F.H.,**
**Minor Children,**

**C.H., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

        A father appeals the order terminating his parental rights to his five-year-old son and three-year-old daughter. **AFFIRMED.**

        Lynn C. Poschner of Borseth Law Office, Altoona, for appellant father.

        Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

        Kimberly S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor children.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A father, Chad, appeals the juvenile court's order terminating his parental rights to his son, C.H., who was born in July 2011, and his daughter, F.H., who was born in October 2013. On appeal, Chad argues the State failed to prove the statutory grounds for termination under Iowa Code section 232.116(1) (2016), termination was not in the children's best interests under section 232.116(2), and the juvenile court should have found a reason to preserve his parental rights under section 232.116(3)(a) or (c). After examining the matter anew,[1] we find clear and convincing evidence to support the juvenile court's findings.

## I. Facts and Prior Proceedings

Chad and Ashley had a volatile relationship, fraught with domestic violence and substance abuse. Together they had two children: C.H. and F.H. In April 2015, the Iowa Department of Human Services (DHS) removed C.H. and F.H. from Ashley's care after receiving reports she had been abusing methamphetamine. At the time of removal, a civil protective order prevented Chad from having contact with Ashley.[2] Ashley had obtained the order in February 2015. Chad, who had an extensive criminal history, violated the order later that month by trying to pry open the door of Ashley's house after she

---

[1] We review termination-of-parental-rights proceedings de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *See id.* (citation omitted). If the evidence supporting the grounds for termination is clear and convincing, we will uphold the order terminating parental rights. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We consider evidence to be "clear and convincing" when "there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *See id.* (citation omitted).
[2] The order placed temporary custody of the children with Ashley and granted Chad visitation.

changed the locks.[3]  But by the time the juvenile court adjudicated the children in need of assistance (CINA) on May 26, 2015, the protective order had been lifted, and Chad and Ashley had gotten married.

The DHS initially placed the children with their maternal great-aunt, but after she reported concerns about the arrangement, the DHS modified the placement to the children's paternal grandmother, Leann.  Chad had daily visits with his children that Leann supervised.  Upon DHS recommendation, Chad began attending individual therapy.  Although he was initially consistent with therapy, in September 2015, Chad started missing appointments.  Chad's therapist cautioned that Chad would be unable to meet his goals without more reliable attendance.

The domestic-violence issues between Ashley and Chad persisted.  In October 2015, Ashley moved out of the home she shared with Chad and began living at a domestic-violence shelter.  At the review hearing that month, the juvenile court opined "any romantic relationship between [Chad and Ashley] is a clear impediment to reunification."  But as evidenced by their regular reports of the abusive and harassing behavior of the other to the DHS, Chad and Ashley continued to have contact.  More than once, each applied for no-contact orders against the other and then failed to attend the scheduled court hearing in the matter.  In December 2015, Ashley was arrested for domestic-abuse assault after Chad reported that she had run him over with her vehicle.

---

[3] Chad also faced charges for burglary and possession of burglar's tools in connection with the incident; those felony charges were later dismissed.

Chad faced legal difficulties of his own. From January to July 2016, he was incarcerated at the Polk County jail for driving while his license was barred. While Chad was incarcerated, concerns regarding Chad's history of domestic abuse and controlling behavior began to mount. Chad placed more than 300 calls to Leann and Ashley while he was in jail. After Chad's release to the Fort Des Moines Men's Facility in July, he called a former paramour repeatedly until she brought him personal necessities. She explained to the DHS that Chad would continue to harass her until she ceded to his demands.

In August 2016, the State moved to modify the children's placement after the DHS reported concerns that Leann had been assaulted by Ashley and failed to promptly report it. The State also cited reports from the children that they were visiting Chad at the Fort Des Moines with Leann, who was no longer authorized to supervise visits "due to [Chad's] history of controlling behavior and [Leann] being unable to set appropriate boundaries." The juvenile court removed the children from Leann's care and placed them in foster care.

Once Chad was released from jail, the DHS requested that he participate in domestic-violence services. But Chad refused, denying he had abused Ashley. Chad began attending individual therapy again, but as before, his attendance was sporadic. In a meeting with the Court Appointed Special Advocate (CASA), Chad questioned the necessity of continuing with his therapy.

Chad consistently participated in supervised visitation twice a week with C.H. and F.H., but he resisted performing parental tasks like helping C.H. with his homework at the visits. Moreover, the social workers involved in the matter reported concerns about Chad's behavior. C.H. began exhibiting false hopes

and expectations about returning to Chad's care, which the service providers suspected were the result of C.H.'s conversations with Chad. C.H.'s therapist noted C.H. was distressed and confused by his conversations with Chad, seeming to believe others were lying about Chad and keeping him away without reason. She believed Chad had been coaching C.H.

Moreover, Chad treated service providers with disrespect. Chad began making inappropriate comments to and about a family safety, risk, and permanency (FSRP) worker—commenting on her physical appearance and referring to his relationship with her as "hot and heavy." The FSRP worker left her employer as a result of her concerns and anxiety related to Chad. Another social worker described Chad as "very angry and defiant" in their interactions.

On November 7, 2016, the State filed a petition to terminate the parental rights of Chad and Ashley. The matter proceeded to a hearing on December 7, and the juvenile court issued an order terminating their parental rights under Iowa Code section 232.116(1)(f) for C.H. and section 232.116(1)(h) for F.H. The court found Chad had "not addressed [the] significant risk that he poses for on-going domestic violence despite having opportunity for [the] same" but, rather, had "continued to participate, extensively, in domestic violence and choices seeking to inappropriately control others and situations."

Chad appeals the juvenile court's termination order.[4]

---

[4] Ashley also filed a notice of appeal, but it was untimely. *See* Iowa R. App. P. 6.101(1)(a). Accordingly, the supreme court dismissed her appeal. *See Robco Transp., Inc. v. Ritter*, 356 N.W.2d 497, 498 (Iowa 1984).

## II. Analysis

## A. Statutory Grounds

Iowa Code section 232.116(1)(f) and (h) requires the State to prove, among other things: (1) the children have been removed from the physical custody of their parents and (2) they cannot be returned to their parents' custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(3)–(4), (h)(3)–(4). Chad contends the State failed to prove either of these requirements.

**Removal from custody.** Citing *In re C.F.-H.*, 889 N.W.2d 201, 203–08 (Iowa 2016), Chad argues the State did not establish that C.H. and F.H. had been removed from his custody because at the time of the removal, a protective order placed the children in Ashley's custody. Section 232.116(1)(f)(3) and (h)(3) require that the children be "removed from the physical custody of the child's parents" for a defined period of time—twelve of the last eighteen months if the child is at least four years old and six of the last twelve months if the child is three years old or younger. *See id.* § 232.116(1)(f), (h). In *C.F.-H.*, the supreme court construed the "removal" requirement of section 232.116(1) and found a removal "invariably involves a dynamic change of circumstance, not stasis." 889 N.W.2d at 206. The court reasoned this construction "ensures that before termination occurs under these subsections, a parent has had a chance at physical custody in the past that has been unsuccessful." *Id.* at 207.

We find clear and convincing evidence the children were removed within the meaning of section 232.116(1)(f)(3) and (h)(3). Chad reads *C.F.-H.* too broadly. In *C.F.-H.*, no removal occurred; the child remained in the custody of the mother throughout. *See id.* at 202–03. But here, C.H. and F.H. were

removed when the DHS placed the children with a relative in April 2015.[5] Because we construe the word "parents" to include both singular and plural, *see* Iowa Code § 4.1(17), we find the requirement that C.H. and F.H. be "removed from the physical custody of the parents" includes removal from either parent. *See In re N.M*, 491 N.W.2d 153, 155 (Iowa 1992). The civil protective order's placement of the children temporarily with Ashley is inconsequential. By the time of the termination hearing, both children had been removed from Chad's custody for approximately twenty months, fitting well within the timing requirements of section 232.116(1)(f)(3) and (h)(3).

**Return to custody.** Chad next argues the State failed to prove C.H. and F.H. could not be placed in his custody because at the time of the termination, he "was in good standing on probation"; "had obtained suitable housing from the children, separate from [Ashley]"; and had "demonstrated adequate parenting abilities during his supervised visitation with the children." We disagree that Chad's situation allowed a safe return of the children.

A child cannot be returned to the care of a parent if the child would either remain in need of assistance or be at risk of adjudicatory harm. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Although Chad had obtained appropriate housing and employment by the time of the termination hearing, he was still not in a position to resume care of his children. Chad had not progressed to

---

[5] The *C.F.-H.* court specifically declined to address this situation. *See* 889 N.W.2d at 207 n.2 ("We express no view on the question of whether a removal of the child from one parent is sufficient to support termination of parental rights of a noncustodial parent.").

unsupervised visitation, and he was inconsistent in his participation in mental-health treatment. Even more concerning, Chad declined services to address his history of domestic violence and refused to acknowledge his prior abuse of Ashley. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015) (finding child could not be returned to mother's care when mother had "gained very little insight over the course of the proceedings about her domestic violence issues and the dangers they pose to the children"); *see also In re J.R.*, No. 15-0705, 2015 WL 4162343, at *4 (Iowa Ct. App. July 9, 2015) (finding children could not be returned to father's care when father had not addressed domestic-violence issues in therapy). Further, Chad continued to display controlling and manipulative behavior—sometimes directed at his children—throughout the pendency of the proceedings. Accordingly, we are convinced that C.H. and F.H. could not be safely returned to Chad's care at the time of the termination hearing.

### B.    Best Interests of the Children

Finding the statutory requirements satisfied, we turn to whether termination of Chad's parental rights was in the children's best interests. In our analysis, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See* Iowa Code § 232.116(2).

Chad argues termination is not in the children's best interests because they are strongly bonded with him. But a bond between parent and children does not satisfy the best-interests requirement if a return to the parent's care would risk further instability or harm to the children. *See P.L.*, 778 N.W.2d at 37

(requiring the court "to use the best-interest framework established in section 232.116(2)"). In our analysis of the children's safety and needs, we find Chad's past behavior instructive. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Chad has a history of criminal activity and was incarcerated for a significant period of time during the proceedings. He was on probation at the time of the termination hearing and had recently tested positive for methamphetamine. He also has a history of unhealthy behavior related to Ashley. Despite the court's admonition that Chad and Ashley limit their contact, Chad continued to pursue a relationship with her throughout the proceedings. Considering his past behavior and his failure to address the juvenile court's fundamental concern, we find termination is in the children's best interests here.

### C.    Permissive Factors

Lastly, we consider whether any of the permissive factors in section 232.116(3) outweigh the need for termination. Chad argues the juvenile court should not have terminated his parental rights because of his bond with his children or, alternatively, because the children could have been returned to Leann's care. Under Iowa Code section 232.116(3)(a) and (c), the court may decline to terminate parental rights if the court finds it "would be detrimental to the child at the time due to the closeness of the parent-child relationship," or "[a] relative has legal custody of the child." These factors are permissive; the court has discretion "based on the unique circumstances of each case and the best

interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). For the reasons stated above, we decline to find the closeness of the parent-child relationship should prevent termination under these circumstances. Moreover, section 232.116(3)(a) does not apply because custody was placed with the DHS, not Leann, at the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 112–13 (Iowa 2014).

Accordingly, we affirm the juvenile court order terminating Chad's parental rights.

**AFFIRMED.**