William EDMUNDSON, Appellant,

v.

MILEY TRAILER CO. et al., Appellees.

No. 55596.

Supreme Court of Iowa.

Oct. 17, 1973.

John D. Randall and James E. Bennett, Cedar Rapids, for appellant.

Larry D. Spaulding, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for J. Thomas Heckel, appellee.

Dennis D. Jerde, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for Richard Handy, appellee.

HARRIS, Justice.

This appeal is from a ruling sustaining one of two alternative grounds urged in defendants' special appearances. The action arises from an automobile accident which is claimed to have resulted from a defective trailer hitch. Trial court agreed with defendants' contention plaintiff was not a resident of Iowa entitled to invoke section 617.3, The Code, (long-arm statute). The ruling did not pass upon an alternative claim that the defendants lacked the requisite minimum contacts with Iowa to support Iowa jurisdiction. We reverse and remand.

Plaintiff is an itinerant horse trainer. His work requires extensive and continued travel throughout the country. During the past several years he has trained and shown horses for successive employers in Illinois, Ohio, Arizona and Wisconsin. It has been an almost nomadic life keeping plaintiff constantly on the move. At the time of the accident plaintiff was employed by Miles Cooperman of Chicago, Illinois, for whom he had traveled in thirty-one states.

A native Iowan, plaintiff has maintained here as much a home base as his wandering vocation allowed. These connections have not been typical in the same sense his life style has not been typical. The dispute as to residence is complicated by a thirteen month period from June 1968 to July 1969 during which plaintiff undertook a short lived marriage in the state of Michigan. Except for those thirteen months plaintiff maintained whatever roots he had in Iowa from his birth until the date of the accident, August 13, 1969. He maintained a mailing address with a sister and a friend, both in Iowa. Even during the thirteen months mentioned he maintained his personal checking account in a Des Moines bank. He held an Iowa drivers license. He always voted (most recently prior to the sojourn in Michigan) in Iowa. He owned some horses which he kept with a friend near Des Moines. From January 1969 up to the date of the accident he was in Iowa at least once a month, sometimes up to one week at a time. After all his trips he returned to Iowa. For the year 1969 he filed an Iowa income tax return but not a Michigan tax return. He listed himself as an Iowa resident for the year 1969.

The record indicates plaintiff always returned to Iowa after his travels. Although he may be said to have resided in Michigan during some of the marriage the evidence shows it was his intention to maintain his contacts here and to re-establish his residency in Iowa.

I. The extraordinary process prescribed in the long-arm statute, section 617.3, The Code, is by its terms made available to "any resident of Iowa." The trial court did not believe plaintiff established a residence in this state after his sojourn in Michigan. It was therefore not necessary for it to determine whether the term "residence" as used in the statute was synonymous with "domicil." The terms sometimes are and sometimes are not held to be synonymous, depending on the nature of the action in which the question is raised.

"Residence" and "domicil" are terms of fixed and familiar meaning. Residence may be temporary, transient or permanent. Domicil is a broader term. Residence coupled with the required intent is necessary to acquire domicil but actual residence is not necessary to preserve an established domicil. Domicil, once established, continues until supplanted by the acquisition of a new one. Every person

has one and only one domicil but may have no residence, one residence or several residences. Pittsburgh-Des Moines Steel Co. v. Town of Clive, 249 Iowa 1346, 91 N.W. 2d 602; In re Estate of Jones, 192 Iowa 78, 182 N.W. 227, 16 A.L.R. 1286. See also 25 Am.Jur.2d, Domicil, section 4, page 7; 28 C.J.S. Domicile § 2, page 5; Goodrich and Scoles, Conflict of Laws, section 17, page 33.

"The requisite element of intent to change one's domicil necessarily includes an intention to abandon the former domicil, *and to do so permanently. There must be both an absence of an intent to return and an intent to remain in the place chosen as the new domicil.* To effect a change of domicil, there must be the intent to exchange the prior domicil for another. *If a person establishes a new dwelling place, but never abandons the intention* of returning to the old dwelling place as his only home, the domicil *remains at the old dwelling place.*" (Emphasis added) 25 Am.Jur. 2d, Domicil, section 24, page 19. See also 28 C.J.S. Domicile § 9, page 11.

We find no showing plaintiff's domicil was ever changed from Iowa, his domicil of origin. His stay in Michigan during the months of his marriage, even if it amounted to residence there at the time, did not rise to a change of domicil. We do not find it established in the record plaintiff ever formed the required intent to change his domicil from Iowa.

The record is replete with evidence of a continuance of plaintiff's ties in Iowa. The checking account, the mailing address, the horses left in Iowa, plaintiff's frequent visits here, the tax return filed in Iowa when none was filed in Michigan, plaintiff's drivers license all negative any intent of becoming domiciled in Michigan. On these facts we find plaintiff was at all times domiciled in Iowa.

The same facts establish sufficient proof of his renewed residence here after his short stay in Michigan. There is no serious dispute plaintiff removed himself entirely from Michigan and returned to what he considered his "home base" in Iowa.

A consideration of a person's domicil will often shed light in a dispute over his residence. Only for that reason have we noted plaintiff's domicil to have been continuously in Iowa. Under 617.3, The Code, the plaintiff was required only to *reside* in Iowa. *Domicil* is not a requirement of the statute. If plaintiff's residence was ever outside Iowa it was re-established here prior to the accident and was here when the action was brought. It was error for the trial court to hold otherwise.

II. We turn next to the alternative ground of defendants' special appearances. Did defendants have sufficient "minimum contacts" with Iowa to subject them to the jurisdiction of our courts?

In passing on a special appearance we accept as true the allegations of the petition and contents of uncontroverted affidavits. The burden is upon the plaintiff to sustain jurisdiction. Once plaintiff has made a prima facie showing of jurisdiction the burden of going forward with the evidence falls upon defendants to rebut or overcome the prima facie showing. A hearing on a special appearance is a special proceeding not reviewable de novo. The findings of the trial court have the force and effect of a jury verdict. Tice v. Wilmington Chemical Corp., 259 Iowa 27, 141 N.W.2d 616, 143 N.W.2d 86; Miller v. Vitalife Corporation of America, 173 N. W.2d 91 (Iowa 1969).

The facts of this case as detailed in plaintiff's claims show the purchase by plaintiff of a Miley "two-horse in-line trailer" from the defendant J. Thomas Heckel. Heckel is the operator of the Bar Money Ranch located at Pacific, Missouri, and is a dealer for the defendant Miley Trailer Co. of Fort Worth, Texas. Heckel was informed of the type of driving plaintiff would be doing and the type of cargo to be hauled by the trailer. Plaintiff also

purchased a "Reese" trailer hitch from the defendant Harley J. Cook who operates Harley's Hitchin' Post at Portage, Michigan. Cook installed the Reese trailer hitch on plaintiff's vehicle. The plaintiff requested the trailer be completely checked by defendant Miley Trailer Co. and repaired if necessary to be capable of use in hauling horses throughout the country. The plaintiff caused the trailer to be serviced at defendant Richard Handy's Service Station at Plainwell, Michigan. Again he requested the trailer be placed in good operating condition for use in hauling horses throughout the country. Plaintiff's subsequent accident near Atlantic, Iowa, on August 13, 1969 is the only contact any of the defendants are shown to have had with Iowa.

The constitutional issue involved in minimum contact cases arose in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 the principle was established " * * * in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the *maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'*" (Emphasis added) During the past two decades our own opinions have reflected a national tendency which generally has required less and less contact for the constitutional minimum. In Anderson v. National Presto Industries, 257 Iowa 911, 135 N.W. 2d 639, we subscribed to the modern trend toward extension of jurisdiction over nonresidents. A nonresident defendant marketed a coffeemaker designed for general sale outside his home state and was held to answer in this state for injuries caused by its defective manufacture. We noted " * * * that manufactured products are ordinarily designed for commercial sale in whatever markets may be found for them, without regard to state lines. They are placed in the stream of commerce; and when they reach a foreign state they have the protection of its laws. It is not unfair

to say they should assume the burdens as well as the benefits." 257 Iowa at 919, 135 N.W.2d at 643.

This claim of jurisdiction is recognized by the Restatement of Conflict of Laws, section 37, page 156:

"A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

The trailer and hitch which are the subject of this controversy were put into the stream of commerce. The gas station owner serviced an automotive product which obviously was going to travel on the highways of the United States. It is reasonable to assume all defendants should be subject to a lawsuit anywhere the trailer and hitch would travel throughout the nation if they were negligent.

It must be remembered minimum contact cases are analyzed on a case by case basis. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. Under the facts presented here we hold our long-arm statute, section 617.3, The Code, available even when the only contact of the defendant is the single act of the injury within this state. The trial court would not have been justified in sustaining the special appearance on the alternative ground.

Reversed and remanded.

RAWLINGS, UHLENHOPP, REYNOLDSON and McCORMICK, JJ. concur.

MASON, J., MOORE, C. J. and LeGRAND and REES, JJ., dissent.

MASON, Justice (dissenting).

I dissent since I do not agree with the determination of the majority in division

II that the trial court would not have been justified in sustaining the alternative ground urged in defendants' special appearance wherein it is asserted defendants lacked the requisite minimum contacts with Iowa to support Iowa jurisdiction.

None of the defendants were shown to be present within the state of Iowa. The automobile accident which is alleged to have resulted from a defective trailer hitch is the only contact any of them are shown to have had with Iowa. Personal jurisdiction over the defendants was attempted under the provisions of section 617.3, The Code.

As a result of this single contact the majority subjects these nonresident defendants to a judgment in personam based on service under the long-arm statute.

The majority relies heavily on Andersen v. National Presto Industries, 257 Iowa 911, 135 N.W.2d 639. Defendant there had manufactured a coffee maker in Wisconsin and shipped it to a retailer in Iowa for sale. Plaintiff purchased this in Iowa and was injured when using the product. The court enumerated a stream of commerce idea in holding that there were sufficient contacts to satisfy jurisdiction. The facts show that the "stream of commerce" found sufficient to sustain jurisdiction was from the producer to a retailer.

In the present case defendant Miley Trailer Company was a producer, while defendant Handy, Heckel, and Cook were either retailers or servicemen. Thus as to Miley the "stream of commerce" was from producer to retailer to consumer, but all in a state other than Iowa. As to the other defendants, they sold or serviced the product to the plaintiff consumer in a state other than Iowa.

The facts of *Edmundson* are distinguished from *Presto* by the lack of movement of the product from the manufacturer to an Iowa retailer. The product did allegedly result in harm in Iowa, however, in both cases. The main concern would seem to be the reasonableness of conferring jurisdiction in the situation.

The starting point for a determination of whether there are sufficient minimum contacts in a given situation to satisfy due process is embodied in the following quote from International Shoe Co. v. State of Washington, 326 U.S. 310, 316–319, 66 S. Ct. 154, 158–160, 90 L.Ed. 95, 102–104:

" * * * [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

" * * * *

" * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. * * * [citing authorities]

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

The following statement appears in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, 1298:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

In Rath Packing Co. v. Intercontinental Meat Trad., Inc., 181 N.W.2d 184 (Iowa 1970), an action for breach of contract, Justice Stuart held that the contacts of defendant with Iowa were insufficient to satisfy due process requirements. Defendant's contacts were: (1) the trip to Iowa by defendant's president to discuss complaints received by plaintiff (Rath Packing Company) about the products; (2) temporary storage of the pork skins in Iowa at plaintiff's request and for his benefit; (3) contract provision for shipment of skins F.O.B. Waterloo to other states; and (4) size of order and shipping and car load box contemplated a relationship of considerable duration. The court found the contacts insufficient and thus it would be unreasonable to subject this defendant to jurisdiction of Iowa.

Leaning again on *Rath* I do not believe the minimum contacts requirements for judicial jurisdiction have been met in this case. I would hold that the maintenance of the suit in Iowa offends traditional notions of fair play and justice. In my opinion it would be unreasonable to subject these defendants to the jurisdiction of the Iowa courts as a result of this single isolated contact referred to in the majority opinion.

MOORE, C. J., and LeGRAND and REES, JJ., join this dissent.