UNIVERSAL COOPERATIVES,
INC., Plaintiff,

v.

TASCO, INC., Defendant.

TASCO, INC., Appellee,

v.

UNIVERSAL COOPERATIVES, INC.;
and Bangor Punta Operations,
Inc., Appellant.

No. 63957.

Supreme Court of Iowa.

Jan. 14, 1981.

140

Gene Yagla of Lindeman & Yagla, Waterloo, for appellant, Bangor Punta Operations, Inc.

Max E. Kirk of Ball & Nagle, P. C., Waterloo, for appellee, Tasco, Inc.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE and McGIVERIN, JJ.

McGIVERIN, Justice.

This interlocutory appeal arises out of the efforts of Tasco, Inc., to obtain personal jurisdiction in Iowa over Bangor Punta Operations, Inc., (BPO), a foreign corporation. The trial court overruled BPO's special appearance and BPO has appealed that ruling to us. We affirm.

Tasco is an Iowa corporation located in Shell Rock, Iowa. It manufactures and sells portable livestock confinement units. In 1974 Tasco entered into a contract with one of BPO's wholly owned subsidiaries, Agri-Products Division of Starcraft Company. Starcraft was to manufacture some confinement units for Tasco. BPO is a New York corporation, and Starcraft was located at Goshen, Indiana.

After Starcraft and Tasco made their contract, BPO sold Starcraft to Universal Cooperatives, Inc. Universal sued Tasco in Iowa for a debt that Tasco allegedly owed to Starcraft. Universal is not involved in this appeal. Tasco sought to bring BPO into this action by alleging breach of contract and several business torts arising out of the agreement of BPO's subsidiary, Starcraft, to manufacture the confinement units. Tasco denominated its claim against BPO as a counterclaim. While the only issue before us today is whether an Iowa court has in personam jurisdiction over BPO, we note that Tasco's pleading is not a counterclaim but rather a cross-petition against a third-party defendant, BPO. Iowa R.Civ.P. 34. Since BPO has specially appeared for the sole purpose of attacking the jurisdiction of the Iowa court, Iowa R.Civ.P. 66, 104(a), we need not decide whether BPO may properly be brought in as a third-party defendant under rule 34.

Tasco first attempted to serve BPO under Iowa's long-arm statute, section 617.3, The Code 1975. Section 617.3 gives Iowa courts in personam jurisdiction over a foreign corporation if it "makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa."

On March 12, 1976, BPO filed a special appearance claiming that service under section 617.3 was improper because the contract with Tasco was not to be performed in Iowa and no torts were committed in Iowa. This special appearance was sustained. The district court ruled that Tasco had failed to meet its burden of proving that the court had jurisdiction under the statutory language of section 617.3. Tasco appealed that ruling. We transferred the case to the court of appeals. On April 28, 1978, the court of appeals affirmed the trial court's sustention of BPO's first special appearance. *Universal Cooperatives, Inc. v. Tasco, Inc.*, 268 N.W.2d 652 (Iowa Ct.App.1978). It expressly declined to decide "the constitutional minimum contacts question."

While the first appeal was pending, Tasco obtained an order from the district court allowing Tasco to serve BPO under Iowa R.Civ.P. 56.1(n) and 56.2. These rules allow service of process, after court order, in any manner "consistent with due process of law."

After service under these rules, BPO specially appeared again. It alleged that the issue of personal jurisdiction had already been litigated and therefore the doctrine of issue preclusion prevented another service of process. BPO also denied that it had the necessary minimum contacts with Iowa to allow service that was consistent with due process. There is no claim by BPO that notice was inadequate. The trial court overruled this special appearance. We granted BPO's application for interlocutory appeal.

The following issues have been preserved for our consideration:

(1) Did the district court have jurisdiction to order service of process under Iowa R.Civ.P. 56.1(n) and 56.2 while Tasco was appealing the quashing of its at-

tempted service under section 617.3, The Code?

(2) In a suit by a resident of Iowa against a foreign corporation, does quashing service for failure to meet the statutory requirements of section 617.3 preclude the issue of whether service is constitutional and therefore available under rules 56.1(n) and 56.2?

(3) Did BPO have the necessary minimum contacts with Iowa so that service was consistent with due process?

**I.** *Jurisdiction to enter order.* The district court ordered service on BPO under rules 56.1(n) and 56.2 while Tasco's appeal from a ruling quashing service under section 617.3 was pending. BPO says the court was without jurisdiction to enter the order allowing service under the rules while the appeal was pending. We conclude that the appeal did not divest the district court of jurisdiction to order service under the rules.

The appeal from the quashing of the service under section 617.3 was from a final order. Tasco's appeal, decided by the court of appeals, was of right. *Boye v. Mellerup,* 229 N.W.2d 719, 720 (Iowa 1975); *Saxton v. State,* 206 N.W.2d 85, 86 (Iowa 1973). Therefore, the provisions of Iowa R.App.P. 2(b) staying proceedings in the district court after an order granting an interlocutory appeal are inapplicable.

Ordinarily, the filing of a notice of appeal from a final decision divests a district court of jurisdiction until some part of the case is remanded. *In re Marriage of Novak,* 220 N.W.2d 592, 596 (Iowa 1974); *McCauley v. Municipal Court,* 254 Iowa 1345, 1346, 121 N.W.2d 96, 96 (1963). We have, however, recognized exceptions to the general rule. A trial court, after a party appeals, retains jurisdiction to proceed on "issues collateral to and not affecting the subject matter of the appeal." *In re Estate of Tollefsrud,* 275 N.W.2d 412, 417–18 (Iowa 1979).

This case calls for an application of the exception to the general rule. The issue in the first appeal was whether service was proper under the terms of the long-arm statute, section 617.3. As explained in division II, the question of whether service is permissible under the language of section 617.3 is not the same as whether service is constitutional and therefore available under rules 56.1(n) and 56.2. The appeal from quashing service under section 617.3 did not divest the district court of jurisdiction to order service by another collateral method.

A party attempting to serve process on another should be able to appeal an unsuccessful attempt at service and retain the ability to serve the defendant by another method. A party may make more than one attempt at service. *Patten v. City of Waterloo,* 260 N.W.2d 840, 842 (Iowa 1977). When one attempt is quashed for failure to meet statutory requirements and an appeal is taken, we hold that the trial court retains jurisdiction to enter an order for service under rules 56.1(n) and 56.2. If service under 56.1(n) and 56.2 is successful, the appeal from an unsuccessful attempt at service by another method would be moot.

**II.** *Issue preclusion.* In ruling on BPO's first special appearance following an attempt at service under the long-arm statute, section 617.3, the district court decided that Tasco had failed to show that the contract was to be performed in Iowa or that the tort was committed in Iowa. BPO claims the decision on this issue precludes a finding that due process minimum contacts were present to allow later service under rules 56.1(n) and 56.2. We disagree because whether the service of process in this case is consistent with due process is not the same issue as whether the statutory requirements of section 617.3 have been met.

The first step in determining whether the doctrine of issue preclusion applies is to decide whether there is an identity of issues in the successive proceedings. *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981). The issue determined by the district court and the court of appeals in quashing the first service was only that Tasco had failed to show that service met the statutory requirements of section 617.3. Both courts decided that Tasco failed to

prove that a contract was to be performed in Iowa or that a tort was committed in Iowa. Neither court decided whether an Iowa court could constitutionally exercise in personam jurisdiction over BPO because Tasco failed to make the initial showing that BPO came within the terms of the long-arm statute, section 617.3. In short, both courts only decided whether a statute authorized service and concluded it did not. *See Larsen v. Scholl*, 296 N.W.2d 785, 787 (Iowa 1980).

■ In contrast, the issue determined by the district court in ruling on BPO's latest special appearance following service under rules 56.1(n) and 56.2 was whether service could be made "consistent with due process of law."[1] If service is constitutional, these rules authorize Iowa courts to exercise jurisdiction. The rules allow Iowa courts to exercise jurisdiction that "is coextensive with the outer limitations of constitutional due process." *Larsen*, 296 N.W.2d at 789. We conclude that quashing service for failure to meet the statutory requirements of section 617.3, where the court does not decide whether service would be constitutional, does not preclude the issue of whether the constitution allows Iowa to exercise in personam jurisdiction.

■ Whether a state court may exercise jurisdiction consistent with the due process clause depends on whether the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95, 102–03, 161 A.L.R. 1057, 1061 (1945). In applying this constitutional standard on a case-by-case basis, our court has looked at the following factors, concentrating on the first three:

(1) The quantity of the contacts;

(2) The nature and quality of the contacts;

(3) The source and connection of the cause of action with those contacts;

(4) The interest of the forum state; and

(5) Convenience.

*Larsen*, 296 N.W.2d at 788; *Berkley International Co. v. Devine*, 289 N.W.2d 600, 603 (Iowa 1980); *Kagin's Numismatic Auctions, Inc. v. Criswell*, 284 N.W.2d 224, 228 (Iowa 1979); *Douglas Machine & Engineering Co. v. Hyflow Blanking Press Corp.*, 229 N.W.2d 784, 789 (Iowa 1975).

■ The answer to the question of whether service is constitutional, and therefore allowed by rules 56.1(n) and 56.2, is not dependent on a finding that there was a contract to be performed in Iowa or a tort committed in Iowa. The due process clause does not limit state court jurisdiction solely to cases where a contract was to be performed in the state or a tort was committed in the state. *See, e. g., Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (Ohio could constitutionally exercise in personam jurisdiction over nonresident corporation carrying on "continuous and systematic corporate activities" in Ohio where suit did not arise out of corporation's activities there); *International Shoe* (state could constitutionally exercise in personam jurisdiction over nonresident corporation in suit to collect unemployment tax where corporation employed salesmen in state but made no contracts there). While Tasco, in attempting service under rules 56.1(n) and 56.2, was precluded from asserting that a contract was to be performed in Iowa or a tort was committed in Iowa, it was not precluded

---

**1.** Iowa R.Civ.P. 56.1(n) provides:

If service cannot be made by any of the methods provided by this rule, any defendant may be served as provided by court order, consistent with due process of law.

Iowa R.Civ.P. 56.2 provides in relevant part:

Every corporation . . . that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this

state shall hold such corporation . . . amenable to suit in Iowa in every case not contrary to the provisions of the constitution of the United States.

Service may be made on any such corporation . . . (a) as provided in rule 56.1 . . . or (b) if such service cannot be so made, in any manner consistent with due process of law prescribed by order of the court in which the action is brought.

from showing that BPO had sufficient minimum contacts with Iowa. There had been no prior decision on this constitutional issue, and therefore no determination of the availability of service under rules 56.1(n) and 56.2.

■ III. *Minimum contacts.* In determining whether an Iowa court could constitutionally exercise personal jurisdiction over BPO, and therefore order service under rules 56.1(n) and 56.2, we first look at the contacts BPO had with Iowa. The pleadings and affidavits before the trial court reveal that BPO, or its subsidiary, Starcraft, had the following contacts with this state. BPO does not dispute that the acts of its subsidiary can be attributed to it for purposes of determining jurisdiction. *See 2 Moore's Federal Practice* ¶ 4.25[6] (2d ed. 1980). BPO was authorized to do business in Iowa from September 1968 until it voluntarily withdrew in August 1975. It maintained an office in Red Oak, Iowa. During the period when BPO was authorized to do business in Iowa, Starcraft sent a representative to Iowa to propose that Starcraft manufacture confinement units for Tasco. There were several meetings in Iowa involving negotiations over the manufacturing agreement which was signed on June 5, 1974. Engineers for Starcraft came to Iowa to inspect Tasco's operation. Tasco provided the engineers, while in Iowa, with specifications, plans and a list of suppliers to enable Starcraft to learn about manufacturing the units. Tasco and Starcraft communicated with each other during the course of the relationship which lasted until the latter part of 1974. In October 1974 Starcraft displayed confinement units at Fort Dodge under its own label. It distributed promotional literature, which featured a picture of the Tasco unit, at the show.

■ These contacts by Starcraft indicate that BPO's involvement with Iowa was more than just the result of unilateral activities by Tasco. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958); *Larsen,* 296 N.W.2d at 789. While it was authorized to do business in Iowa, BPO, through Star-

craft, solicited and negotiated a contract with an Iowa corporation. Through these contacts, BPO allegedly secured confidential information and trade secrets from Tasco which Tasco claims it has wrongfully used. Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," it may be required to defend a suit in that state arising out of those activities. *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

■ While we are precluded from deciding that the resulting contract was to be performed in Iowa, it is clear that BPO, while authorized to do business here, sent representatives into this state to propose and negotiate the manufacturing agreement. This is the type of minimum contacts upon which an Iowa court may constitutionally exercise in personam jurisdiction. *Id.; Douglas Machine,* 229 N.W.2d at 790; A. Vestal and P. Willson, *Iowa Practice* § 10.01(1) (1974). The fact that BPO voluntarily withdrew from Iowa does not limit Iowa's jurisdiction to hear cases arising out of BPO's activities here. *Ladd v. Brickley,* 158 F.2d 212, 217 (1st Cir. 1946); *cert. denied,* 330 U.S. 819, 67 S.Ct. 675, 91 L.Ed. 1271 (1947); *Gutierrez v. Raymond International, Inc.,* 484 F.Supp. 241, 249 (S.D.Tex. 1979).

■ We agree with the trial court that "these contacts show a systematic involvement of BPO in Iowa and the series of events leading up to Tasco's present lawsuit." Rather than a single isolated occurrence, BPO has had a continuing relationship with Tasco involving several visits to Iowa concerning their business relationship. Where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," the state may constitutionally exercise in personam jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295–99, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490, 500–02 (1980).

■ While we are precluded from deciding that a tort was committed in Iowa, BPO could have foreseen that any wrongful acts on its part would have a significant impact on Tasco in this state. *Berkley International*, 289 N.W.2d at 605. Where injury or damage occurs to plaintiffs in this state and a defendant should reasonably believe that his conduct would produce damage in Iowa, this state has a strong interest in hearing the case and protecting its residents. *Id.*

After reviewing BPO's contacts with Iowa, in terms of their quantity, nature, quality, source and connection with the cause of action, we conclude that the exercise of jurisdiction by an Iowa court does not offend traditional notions of fair play and substantial justice. We agree with the district court that Iowa courts could constitutionally exercise in personam jurisdiction over BPO.

We have considered the other contentions of BPO, whether addressed or not, and find them without merit. We therefore affirm the trial court's overruling of BPO's special appearance.

AFFIRMED.