John H. SMALLEY, Appellant,

v.

William R. DEWBERRY, d/b/a Auto Speed and Accessory Center, d/b/a ASAC, Appellee,

Technibilt Corporation, Gleason Corporation, and Whittaker Corporation, Defendants.

No. 85–367.

Supreme Court of Iowa.

Jan. 15, 1986.

Gerald T. Sullivan and Brad J. Brady, of Crawford, Sullivan, Read & Roemerman, Cedar Rapids, for appellant.

James R. Snyder, Roger W. Stone, and Carolyn M. Hinz, of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

HARRIS, Justice.

We affirm a trial court ruling which found insufficient minimum contacts to support in personam jurisdiction over defendant, a nonresident of Iowa.

Defendant operates an automotive parts business in Tennessee and sold a steering wheel to David Fisher, an Iowa resident. Fisher happened to make the purchase there because defendant's business was located immediately adjacent to Fort Campbell, Kentucky, where Fisher was then stationed while in military service. Defendant's business caters to military personnel at the base.

We are told there are about 36,000 military personnel and their dependents who live at Fort Campbell but who maintain a permanent residence in their home state. They customarily return to their home states after leaving the base. Fisher was such a person. He purchased the steering wheel for a car and brought it with him to Iowa upon returning here. He later purchased a truck which he also returned here. In Iowa Fisher later removed the steering wheel from the car and installed it in the truck.

Sometime thereafter plaintiff was a passenger in the truck when it struck a utility pole. He sustained severe injuries and brought this suit against the manufacturer of the steering wheel, alleging defects in its manufacture and design. He joined this suit against defendant, claiming negligence and strict liability.

Defendant filed a special appearance on three grounds, including the claim that he lacked the minimum contacts with Iowa to justify jurisdiction here. The parties conducted discovery concerning the issues raised by the special appearance and filed affidavits, interrogatory answers, and deposition transcripts. In sustaining the special appearance the trial court noted defendant had no office in Iowa, did no business in Iowa, had no bank account here, did not advertise here, and had no direct contacts with this state. The court pointed out that defendant's only contact with Iowa came "by way of sale to a person in the military of an automobile part which the retailer [defendant] knew or should have known might appear in any other state of the union...." The trial court concluded this indirect connection was insufficient to justify in personam jurisdiction. This conclusion is the sole question on appeal.

I. There is no contention that plaintiff failed to comply with Iowa Code section 617.3 (1985), our long-arm statute. When disputed, compliance is the first question. *Barrett v. Bryant,* 290 N.W.2d 917, 921–23 (1980). Our question then becomes a consideration of defendant's constitutional challenge. *Berkley International Co. v. Devine,* 289 N.W.2d 600, 602 (Iowa 1980). The standard of review was recited in *Svendsen v. Questor Corp.:*

We accept the allegations of the petition as true. The plaintiff has the burden of sustaining the requisite jurisdiction; however, once a prima facie case has been established, the burden shifts to the defendant to produce evidence to rebut or overcome the prima facie showing. While trial court's findings have the force and effect of a jury verdict, we are not bound by its application of legal principles or conclusions of law.

304 N.W.2d 428, 429 (Iowa 1981) (citations omitted).

II. For forty years inquiries into in personam jurisdiction over nonresidents have begun by quoting an axiom laid down by the United States Supreme Court. A state may exercise jurisdiction over a nonresident defendant under the due process clause of the fourteenth amendment only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). We have long applied five factors to determine whether sufficient contacts exist to support the exercise of jurisdiction over a nonresident defendant:

(1) the quantity of the contacts;

(2) the nature and quality of those contacts;

(3) the source and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980). The first three factors are the most important. *Id.* The United

States Supreme Court has observed that the "minimum contacts" test

is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable."

*Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978) (citations omitted).

In support of his jurisdictional claim plaintiff cites our majority opinion in *Edmundson v. Miley Trailer Co.,* 211 N.W.2d 269 (Iowa 1973). Edmundson purchased a horse trailer from a Missouri dealer and separately purchased a trailer hitch from a Michigan retailer. The plaintiff filed suit against the dealer and the retailer after suffering injuries in an accident allegedly caused by the defective trailer hitch.

On a "stream of commerce" theory we held the defendants had the necessary minimum contacts with Iowa to support jurisdiction here. We noted:

The trailer and hitch which are the subject of this controversy were put into the stream of commerce. The gas station owner serviced an automotive product which obviously was going to travel on the highways of the United States. It is reasonable to assume all defendants should be subject to a lawsuit anywhere the trailer and hitch would travel throughout the nation if they were negligent.

*Id.* at 272.

Defendant thinks, and we are compelled to agree, that our *Edmundson* holding was at odds with the subsequent decision of the United States Supreme Court in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *Woodson,* rejecting Oklahoma's claim of jurisdiction, the Court pointed out:

[W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Peti-

tioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salesperson or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.

It is argued, however, that because an automobile is mobile by its very design and purpose it was "foreseeable" that the [car] would cause injury in Oklahoma. Yet "foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.

*Id.* at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500. The court noted that foreseeability is not wholly irrelevant but added:

[T]he foreseeability that is critical to due process analysis is not the mere likelihood that the product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

Although plaintiff argues otherwise, it is apparent that the *Woodson* decision is a rejection of *Edmundson.* Foreseeability was alone the basis for our claim of jurisdiction in *Edmundson;* there was no claim that the defendants in that case sought to conduct activities in Iowa. Our *Edmundson* holding must be, and is, overruled.

■ III. Plaintiff seeks to distinguish this case from *Woodson* and *Edmundson*

on the basis of the unique, multi-state citizenry of defendant's customers at the military base in Tennessee. In this he relies on *Svendsen,* in which we reversed the sustension of a special appearance. 304 N.W.2d at 429.

Svendsen was injured when a pool table collapsed and fell on her foot. She brought suit against the pool table's manufacturer, a Missouri corporation, which was served under Iowa's long-arm statute. The manufacturer then filed a special appearance, alleging insufficient contacts to support jurisdiction by an Iowa court.

We distinguished *Woodson* because the manufacturer in *Svendsen* was indirectly, through others, seeking to secure a market in Iowa. *Id.* at 431. Evidence that the manufacturer was attempting to attract a market in Iowa was bolstered by the "close geographic proximity of both [defendants and their] distributor to Iowa, the forum state." *Id.*

*Universal Cooperatives, Inc. v. Tasco,* 300 N.W.2d 139 (Iowa 1981) was another post-*Woodson* decision in which we found sufficient minimum contacts to support in personam jurisdiction over a nonresident defendant. Once again, however, the case can be distinguished because that non-resident defendant had been authorized to do business here, participated in several business meetings in Iowa, and was involved here to such an extent as to reasonably anticipate being haled into court here. *Id.* at 144.

In contrast, the defendant here had no direct or indirect involvement with Iowa. His sole relationship was that he sold an automotive part in Tennessee to an Iowa soldier stationed there. The fact that the soldier might be expected to return the part to Iowa is solely a matter of foreseeability. This can no longer be said to be enough for jurisdiction here.

AFFIRMED.