STATE of Iowa ex rel. Thomas J. MILLER, Attorney General of Iowa, Appellant,

v.

BAXTER CHRYSLER PLYMOUTH, INC., and Talton K. Anderson, In His Corporate Capacity as President of Baxter Chrysler Plymouth, Inc., John Markel, Inc., and Timothy S. Markel, In His Corporate Capacity as President of John Markel, Inc., Dean Rawson Nissan, Inc., and Dean C. Rawson, In His Corporate Capacity as President of Dean Rawson Nissan, Inc., John Kraft Chevrolet, Inc. d/b/a John Kraft Chevrolet–Isuzu, Inc., and John E. Kraft, In His Corporate Capacity as President of John Kraft Chevrolet, Inc., Stan Olsen Pontiac, Inc. d/b/a Olsen Auto World and Olsen Family Discount Center, Metropolitan Lincoln–Mercury, Inc. d/b/a Olsen Auto World, Olsen Family Discount Center, and Metro Motors, Olsen Dodge, Inc. d/b/a Olsen Family Discount Center and Olsen Auto World, Stanley Olsen, In His Corporate Capacity as President of Metropolitan Lincoln–Mercury, Inc., and Stan Olsen Pontiac, Inc., and Ronald Olsen, In His Corporate Capacity as President of Olsen Dodge, Inc., Appellees.

No. 89–680.

Supreme Court of Iowa.

May 23, 1990.

Rehearing Denied June 20, 1990.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Sp. Asst. Atty. Gen., and William L. Brauch, Asst. Atty. Gen., for appellant.

Gregory G. Barntsen of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee Dean Rawson Nissan, Inc., and Dean C. Rawson.

James D. Sherrets and Mark A. Weber of Sherrets & Smith, Omaha, Neb., and Sheldon Gallner of Gallner & Gallner, Council Bluffs, for all other appellees.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

The State, *ex relatione* the attorney general (the attorney general), appeals from the dismissal of want of in personam jurisdiction of unlawful advertising claims brought against five Nebraska automobile dealers pursuant to the Iowa Consumer Fraud Act, Iowa Code § 714.16 (1987). The ten defendants are automobile dealerships and their respective corporate presidents whose businesses are located in Omaha, Nebraska.

These five separate actions were filed on September 4, 1987, in the Iowa District Court for Pottawattamie County. The attorney general alleges that the defendants caused advertisements to be circulated in this state which were deceptive and misleading and in violation of the Iowa Consumer Fraud Act, Iowa Code § 714.16 (1987), and the Iowa Consumer Credit Code, §§ 537.6104(2), 537.6110, 537.6112, and 537.6113 (1987). The actions seek to enjoin defendants from advertising, offering for sale or lease, attempting to sell or lease, or selling or leasing motor vehicles in violation of these statutes. The actions also seek to enjoin defendants from employing deceptive or unfair advertising practices and seek restitution for Iowa citizens of any monies wrongfully acquired by means of the allegedly unlawful advertising practices.

The defendants in each of the actions filed motions to dismiss, urging that the Iowa courts lacked in personam jurisdiction over them. The district court found that all of the defendants lacked sufficient contacts with the State of Iowa for purposes of establishing in personam jurisdiction of an Iowa court to hear these claims. The court granted the motions to dismiss the actions. After considering the arguments of the parties on the jurisdictional issue, we affirm the district court's decision concerning the individual defendants but reverse its decision concerning the corporate defendants. As to the corporate defendants, we hold that in personam jurisdiction has been established with respect to the claims asserted.

■ The unlawful advertising claims against defendants are based on advertising in the *Omaha World Herald* by all five dealerships and television advertising over an Omaha television station by the defendant Baxter Chrysler Plymouth. In addition to these advertisements, all five dealer-

ships have placed telephone listings in the U.S. West Yellow Page Directory for Council Bluffs, Iowa. Defendants Baxter Chrysler Plymouth and Olsen Auto World accompanied their yellow page listings with large block advertisements in the Council Bluffs yellow pages.

The *World Herald* is a daily Nebraska newspaper serving the Omaha metropolitan area, including the City of Council Bluffs, Iowa, which is located directly across the Missouri River from Omaha.[1] The *World Herald* publishes several editions including a metropolitan edition, which is distributed in the Omaha–Council Bluffs area, and an Iowa edition, which contains features specifically geared toward Iowans and is distributed to persons living in Iowa but outside the Omaha–Council Bluffs area. The advertisements which defendants placed in the *World Herald* were included in the metropolitan and Iowa editions which reach Iowa residents. Advertising policies at the *World Herald* are such that an advertiser cannot restrict its advertisements to just those versions of the *World Herald* distributed in Nebraska.

Although the parties are not in total agreement concerning the *World Herald*'s circulation statistics, our own review of the affidavits filed in support of and in response to the motion to dismiss suggests that at the times material to the attorney general's claims this newspaper had 221,-091 daily subscriptions and 286,990 Sunday subscriptions. Of the daily subscriptions, 3700 were home delivered to residents of Council Bluffs, Iowa. Of the Sunday subscriptions, 5700 were home delivered to residents of Council Bluffs, Iowa, and over 27,000 were home delivered to subscribers residing in other Iowa locations. Daily subscriptions home delivered in Council Bluffs represented 1.8% of the paper's total subscriptions. Sunday subscriptions home delivered in Council Bluffs represented 2.0% of total subscriptions. Total Iowa home-delivered Sunday subscriptions represented approximately 11.5% of total Sunday subscriptions.

In seeking reversal of the district court's order, the attorney general argues that, by means of the broad language of Iowa Rule of Civil Procedure 56.2, the jurisdictional reach of the courts of this state has been expanded to the widest parameters permitted under the due process clause of the federal constitution.[2] Recognizing that a state may only exercise jurisdiction over a nonresident defendant if that person has maintained "certain minimum contacts" with a forum state, the attorney general urges that defendants' contacts with this state have been substantial and are sufficient to satisfy the due process limitations on in personam jurisdiction.

The attorney general's argument emphasizes the fact that the defendants advertise on an almost daily basis in both the metropolitan edition (circulated in the Council Bluffs area) and the Iowa edition of the *World Herald*. This argument contends that advertising in a publication with the knowledge that it is regularly disseminated to·subscribers in a particular state is an affirmative act to advertise in that state. From this premise, it is urged that, every time a copy of the *World Herald* which contains an advertisement by one of the defendants is sold to an Iowan in Iowa, that event constitutes a separate contact by that defendant with the State of Iowa. Considering only the Sunday edition of the *World Herald*, this adds up to 1,722,448 contacts per year. The attorney general urges that based on these figures defendants' contacts with the State of Iowa are substantial.

The defendants seek to uphold the district court's ruling on the ground that the mere likelihood that the advertisements placed in the Omaha newspaper will find

---

**1.** Council Bluffs and Omaha comprise a Standard Metropolitan Statistical Area (SMSA), which is defined by the U.S. Census Bureau as "a large population nucleus, together with adjacent communities which have a high degree of economic and social integration with that nucleus." U.S. Department of Commerce, Bureau of the Census, *1980 Census of Population, General Population, Iowa* 17–5, A–4 (Aug.1982).

**2.** Each of the defendants was served personally in the State of Nebraska pursuant to Iowa Rule of Civil Procedure 56.2.

their way into Iowa is insufficient to provide the requisite minimum contacts for in personam jurisdiction. They have not, defendants urge, purposefully availed themselves of the privilege of conducting activities within the State of Iowa thereby invoking the benefits and protections of its laws. Defendants assert that the *World Herald* is a third party whose Iowa activities are not attributable to its Nebraska advertisers for purposes of the attorney general's minimum-contact theory.

### I. *Scope of Review.*

 The standard of review for this type of case was discussed most recently in *Smalley v. Dewberry,* 379 N.W.2d 922 (Iowa 1986). The allegations made in the State's petitions and the affidavits submitted to the trial court, if uncontradicted, must be accepted as true. The plaintiff has the burden of establishing jurisdiction, but after a prima facie case has been established, the burden passes to the defendant to produce evidence to rebut or overcome the prima facie showing. The trial court's findings have the force and effect of a jury verdict, however, the court is not bound by the trial court's application of legal principles or conclusions of law. *Smalley,* 379 N.W.2d at 924 (quoting *Svendsen v. Questor Corp.,* 304 N.W.2d 428, 429 (Iowa 1981)); *see also Berkeley Int'l Co. v. Devine,* 289 N.W.2d 600, 602 (Iowa 1980).

### II. *Jurisdiction Over Corporate Defendants.*

 A state may exercise jurisdiction over nonresident defendants under the due process clause of the fourteenth amendment only if the defendant has certain "minimum contacts" with the forum state. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendants must have sufficient contacts such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.

 In *Smalley,* this court indicated that under *International Shoe* and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the jurisdictional inquiry centers on five factors:

1. the quantity of the contacts;
2. the nature and quality of those contacts;
3. the source and connection of the cause of action with those contacts;
4. the interest of the forum state; and
5. the convenience of the parties.

*Smalley,* 379 N.W.2d at 924, *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The first three factors of this test are the most important, *Smalley,* 379 N.W.2d at 924; however, this court has held that the test "is not susceptible of mechanical application; rather, the facts of each case must be weighed to determined whether the requisite 'affiliating circumstances' are present." *Id.* (quoting *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978)).

The attorney general argues that defendants' conduct and connections with the State of Iowa are such that they can reasonably anticipate being haled into court here. This argument is tailored to *World–Wide Volkswagen Corp.,* where the Court stated:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve *directly or indirectly,* the market for its products in other States, it is not unreasonable to subject it to suit in one of those States....

*Id.* at 297–98, 100 S.Ct. at 567, 62 L.Ed.2d 490 (emphasis added). The attorney general argues that defendants' numerous advertisements in Iowa, and the fact that their businesses are located in a market area which contains parts of Iowa, show that they have made efforts to directly serve the Iowa market. Therefore, it is reasonable, he asserts, to subject them to the jurisdiction of Iowa courts and they can reasonably anticipate being haled into court in Iowa.

The attorney general also relies heavily on *Svendsen v. Questor Corp.*, 304 N.W.2d 428 (Iowa 1981), a case involving a Missouri pool table manufacturer sued by an Iowa resident injured in Iowa when her pool table, purchased from an Omaha retailer, collapsed. This court found that the foreign defendant was subject to the personal jurisdiction of the court, and stated that the question before the court was whether the nonresident manufacturer, who indirectly through others served or sought to serve the Iowa market, was subject to the jurisdiction of Iowa courts.

Relying on *World–Wide Volkswagen*'s language regarding the efforts of a manufacturer to directly or indirectly serve a market, we concluded in *Svendsen* that the allegations in plaintiff's petition satisfactorily demonstrated that the Missouri defendant, through its action in marketing its product via the Omaha retailer, sought to serve the Iowa market and was, therefore, subject to the jurisdiction of Iowa courts. 304 N.W.2d at 431.

This holding was reached even though the record in the case did not disclose the marketing territory of the foreign defendant. We stated that it was reasonable to infer that the defendant's commercial transactions resulted in more than insubstantial use and consumption in Iowa. *Id.* We relied in part in our *Svendsen* holding on the close proximity of the defendant's location in Missouri to the State of Iowa and on the fact that the pool table had been sold to the Iowa consumer in Omaha, Nebraska, in finding that it was "foreseeable" to the defendant that it would be haled into an Iowa court. *Id.*

The attorney general argues that the analysis in *Svendsen* dictates a similar result in the present case because the defendants here sought to serve the Iowa market through its newspaper advertisements, television advertisements, and yellow pages listings and advertisements. Moreover, he argues that, because defendants conduct their businesses in a major metropolitan area that encompasses cities in two states, and because they advertise in media that directly serves the area in both states, it is reasonable to infer that their commercial transactions result in more than insubstantial use and consumption in Iowa. The attorney general notes that, although the defendants are not manufacturers, they can foresee that the motor vehicles which they sell will be purchased by Iowans and used within this state.

The defendants argue that the State's reliance on *Svendsen* and its foreseeability analysis is inappropriate because it was decided prior to the *Smalley* decision. Defendants contend that in *Smalley* this court substantially modified the "stream of commerce theory" applied in *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269 (Iowa 1973). 379 N.W.2d at 924–25. They urge that *Svendsen*, like *Edmundson*, involved the question of foreseeability as to whether a Missouri manufacturer could have "reasonably anticipated" being haled in Iowa court. Because *World–Wide Volkswagen* and our *Smalley* holding have retreated from that doctrine, defendants contend that *Svendsen* is no longer appropriate authority.

■ We conclude that our *Smalley* holding in fact reaffirmed the *Svendsen* holding, stating "the manufacturer in *Svendsen* was indirectly, through others, seeking to secure a market in Iowa." 379 N.W.2d at 925. We find both *Svendsen* and *Smalley* to be consistent with the reasoning in *World–Wide Volkswagen*. In *Smalley* and *Edmundson*, "foreseeability" concerned the foreseeability to defendants that their products would eventually cause harm in foreign states, hundreds of miles from their market area. The defendants in these cases did not advertise in the forum state. In the present case, the claim is that the advertisements themselves are the unlawful act giving rise to the cause of action. Consequently, the "foreseeability" issue is foreseeability that the advertisements would be distributed in the Iowa market area. That such distribution would occur was a virtual certainty.

The attorney general argues that in deciding issues of in personam jurisdiction fewer contacts by a defendant with the forum state are required where the cause

of action arises from the defendant's activities within that state. This argument finds considerable support in the *International Shoe* case, where the court recognized that certain single or occasional acts in a state will suffice "because of their nature and quality and the circumstances of their commission," to subject the defendant to the jurisdiction of the state as to causes of action arising out of the act. *International Shoe*, 326 U.S. at 318–20, 66 S.Ct. at 159–60, 90 L.Ed. at 103–05. This principle was reaffirmed in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).

■ More recently, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 1872 nn. 8, 9, 80 L.Ed.2d 404, 411 nn. 8, 9 (1984), the Supreme Court drew a distinction between "general" and "specific" jurisdiction based on the nature of the contacts with the forum state. This view was sharpened in *Burger King* where the court observed "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41 (citations omitted) (footnote omitted). To this observation, the Court added "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.... [I]t may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities...." *Id.* at 473–75, 105 S.Ct. at 2182–83, 85 L.Ed.2d at 541–42 (citations omitted). We find the principles espoused in *Burger King* to be equally applicable to efforts by the state itself to enjoin activities within the forum which contravene its laws.

We believe that the contacts which exist between the corporate defendants and the State of Iowa are clearly insufficient to subject them to suit in the Iowa courts on any cause of action to the same extent as Iowa domiciliaries. Their acts in advertising within this state are sufficient, however, to render them amenable to suit here in an action which seeks to halt that advertising on the ground that it is unlawful. The acts of advertising also establish in personam jurisdiction over these defendants for that portion of the attorney general's action which seeks to invoke the other sanctions which are provided in the relevant regulatory statutes for injuries which flow directly from the alleged unlawful advertising.

Basing in personam jurisdiction on the allegedly unlawful advertising carried on in the forum state does not differ significantly in a constitutional sense from the single act tort jurisdiction which has been recognized in this state since the enactment of Iowa Code section 617.3 in 1963. *See* 1963 Iowa Acts ch. 325, § 1. This jurisdictional nexus not only finds support in *International Shoe*, *McGee*, and *Burger King*, but also in those decisions recognizing extended in personam jurisdiction in actions directed at activities which a state subjects to special regulation. *See, e.g., Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648–50, 70 S.Ct. 927, 930–31, 94 L.Ed. 1154, 1161–62 (1950) (upholding jurisdiction of Virginia court to issue cease and desist order against Nebraska company doing mail order insuring business in Virginia); *Henry L. Doherty & Co. v. Goodman*, 294 U.S. 623, 627–28, 55 S.Ct. 553, 554, 79 L.Ed. 1097, 1099 (1935) (suit in Iowa to vindicate Iowa's interest in regulating sale of securities by New York resident).

III. *Jurisdiction Over Individual Defendants.*

■ The individual defendants, who are officers of the corporate automobile dealerships, urge that, irrespective of whether any basis exists for an Iowa court to exercise in personam jurisdiction over the corporate defendants, they are not subject to suit here under our holding in *State ex rel. Miller v. Internal Energy Management Corp.*, 324 N.W.2d 707 (Iowa 1982). In

that case, we concluded that the fiduciary shield doctrine is applicable with respect to determinations involving in personam jurisdiction over corporate officers as well as to the merits of the claims against those officers in their individual capacity.

We held in *Internal Energy Management* that under the fiduciary shield doctrine a nonresident corporate agent is not individually subject to the forum state's in personam jurisdiction if that individual's only contact with the forum is by virtue of his acts as a fiduciary of the corporation. *Id.* at 710–12. Our review of the papers submitted in support of and in resistance to the motion to dismiss convinces us that the district court's ruling was correct with respect to the individual defendants. The attorney general has failed to demonstrate how any of these persons performed acts in this jurisdiction other than the acts of the corporation with which they were associated.

## IV. *Subject Matter Jurisdiction.*

■■■ The defendants also urge that the district court was without subject matter jurisdiction over this controversy. We find no merit in that contention. For purposes of this argument, we must treat subject matter jurisdiction as involving the power of the court to hear and decide cases of the general class to which the proceeding belongs. The Iowa District Court being a court of general jurisdiction is clearly empowered to hear cases brought by the attorney general to vindicate alleged violation of the regulatory statutes which give rise to the claims in the present case.

We note in this regard, however, that subject matter jurisdiction should not be confused with legislative jurisdiction, *i.e.,* whether a state may constitutionally apply the law of the forum in adjudicating the validity of transactions which took place in whole or in part in another jurisdiction, *see* Restatement (Second) of Conflict of Laws §§ 6, 9 (1971), or whether a state's choice of law rules permit application of its laws to a transaction which occurred in whole or in part outside of its borders. These are matters which go to the merits of the attorney general's claims and do not bear on in personam or subject matter jurisdiction of the court.[3]

We have considered all arguments presented and conclude that the judgment of the district court should be affirmed with respect to its dismissal of the claims against the individual defendants. The district court's judgment is reversed with respect to those claims against the corporate defendants which seek to enjoin the allegedly unlawful advertising carried on in this state by those defendants and those additional claims based on injuries which flow directly from the alleged unlawful advertising. Costs of appeal are taxed one-half to the appellant and one-half to the appellees.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**3.** In *Burger King,* the court observed:

[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding [in personam] jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules.

471 U.S. at 477, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44 (footnote omitted).